# THE AGRICULTURAL SOCIETY OF MONTGOMERY COUNTY, MARYLAND,

## *vs.*

## STATE OF MARYLAND.

*Statutes:  construction; independent sections.    Racing: laws restricting; Chapter 285 of Acts of 1898.*

Chapter 285 of the Acts of 1898 prohibits betting or gambling in any manner on the result of any horse race; section 218 of the Act, in substance, makes an exception in the case of races that are run at agricultural fairs, provided the grounds where such fairs are held are licensed for the purpose by the Circuit Court for the county within which such grounds may be located; this section is severable from the rest of the Act, and even though it were held invalid, the validity of the entire Act would not thereby be affected.                    pp. 480-481

If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may be enforced.                    p. 479

It is only where an obnoxious section is of such import that the other sections without it would cause results not contemplated or desired by the Legislature, that the entire statute must be held inoperative.                    pp. 479-480

Since the main object of all statutes on the subject of horse racing since 1890 has been to curb this form of gaming, it is to be assumed that the prohibitory section of Chapter 285 of the Act of 1898 is severable from the license portion of the Act, and can stand without regard to any possible invalidity of such license section.                    p. 481

*Decided May 4th, 1917.*

Appeal from the Circuit Court for Montgomery County. (PETER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, STOCKBRIDGE and CONSTABLE, JJ.

*Robert B. Peter,* for the appellant.

*Ogle Marbury, Assistant Attorney General,* and *Albert M. Bouic, State's Attorney* (with whom was *Albert C. Ritchie, Attorney General,* on the brief), for the appellee.

CONSTABLE, J., delivered the opinion of the Court.

The appellant, which conducts an annual fair in Montgomery county, was indicted by the grand jury of that county by an indictment containing two counts, the first of which charged that it, on the 25th day of August, 1916, unlawfully and knowingly suffered its grounds to be used for the purpose of making, selling and buying books and pools thereon upon the result of a running race of horses held within the said grounds on the said date. The second count charged the same offense, with the addition that the appellant was not licensed by the Circuit Court for Montgomery County. to suffer its grounds to be used for the purpose of making, selling and buying books and pools thereon upon a result of a running race of horses to be held thereon.

The appellant pleaded not guilty, and the case was submitted to the Court upon an agreed statement of facts. *State* v. *Keller,* 12 Md. 322; *Salfner* v. *State,* 84 Md. 299. The Court found the defendant guilty and imposed a fine of $50 and costs, from which judgment this appeal was taken.

The statute which it is charged the appellant violated is that which was enacted by the Acts of 1898, Chapter 285,

and which is now codified in *Bagby's Code,* Vol. 3, as sections 217, 218, 219, 220 and 221 of Article 27.

Section 217 is as follows:

"It shall not be lawful for any person or persons, or associations of persons, or for any corporation within the State of Maryland, to bet, wage or gamble in any manner, or by any means, or to make or sell a book or pool on the result of any trotting, pacing or running race of horses or other beasts, or race, contest or contingency of any kind, or to establish, keep, rent, use or occupy, or knowingly suffer to be used, kept or rented or occupied, any house, building, vessel, grounds, or place, or portion of any house, building, vessel, grounds or place, or land or water, within the State of Maryland, for the purpose of betting, wagering or gambling in any manner, or by any means, or making, selling or buying books or pools therein or thereupon upon the result of any race or contest or contingency, or by any means or devices whatsoever, to receive, become the depository of, record or register, or forward or purpose, or agree to pretend to forward, any money, bet, wager, thing or consideration of value, to be bet, gambled or wagered in any manner, or device whatsoever, upon the result of any race, contest or contingency, and any person violating any of the provisions of this section shall be deemed guilty of a misdemeanor, and upon conviction thereof shall be subject to a fine of not less than two hundred dollars, nor more than one thousand dollars, one-half of said fine to go to the informer, and shall be subject to imprisonment in jail for not less than six months nor more than one year, or be both fined and imprisoned, in the discretion of the court."

Section 218 provides that nothing in the preceding section shall render it unlawful in any county in the State for any persons to make a pool or book, or to bet within the grounds of any agricultural association, race course, or driving park upon the result of any trotting, pacing or running race of

horses which shall be held within the said grounds, race course or driving park upon which said persons shall make a pool or book or shall so bet upon the same day on which said race shall be held; provided the grounds be licensed by the Circuit Court for the county within which such grounds or tracks may be located. Section 219 provides for the application for the license and the advertisement of the application. Section 220 provides for what the application shall contain. Section 221 provides for what the license shall contain, such as the name of the grounds and the number of days and the month within which such license shall be operated, and further provides what number of days in any one year betting can be carried on, and also what months during which betting shall not be permitted, and further names certain counties to which this section shall not be applicable, including Cecil, Washington and Anne Arundel Counties. Sections 219, 220 and 221 are no longer applicable to Baltimore and Harford Counties, for which, by the Acts of 1912, Chapter 77 and Chapter 132, racing commissions were created to control horse-racing in those counties.

By the said agreed statement of facts it appears:

1. That the defendant is a corporation and owns a fair ground at Rockville in Montgomery county upon which there is a race course.

2. That on the 25th day of August, 1916, the defendant did knowingly suffer its said grounds to be used for the purpose of making, selling and buying books and pools therein upon the result of a running race of horses held within the said grounds on the said 25th day of August, 1916.

3. That the defendant is an agricultural association and annually holds a fair for four days upon its said grounds and that the "fair" for the year 1916 was actually being held upon its grounds on said 25th day of August, 1916, when said running race took place.

4. That the defendant's said race course is the only race course or driving park in Montgomery County upon which

horse races were to be held during the year 1916, and that the racing on this course was for only four days, and they were the days the defendant was actually holding its fair.

5. That the defendant did not apply to the Circuit Court for Montgomery County for a license to suffer its grounds to be used for the making, selling and buying books and pools thereon upon the result of horse-racing in the year 1916, and that no license was issued to the defendant for that purpose in that year.

6. That in the year 1910 the defendant made application to the Circuit Court for a license to permit book-making and pool-selling upon horse-racing upon its said fair grounds for four days during its fair for the year 1910, but that a license was refused by a full bench and that the defendant has not made application for a license since said refusal. That the Circuit Court for Montgomery County in said year 1910 convicted a certain Arthur J. Mark of gaming and book-making at the fair grounds of the defendant at its annual fair held for the year 1910 and was fined four hundred dollars and costs.

7. It is further agreed that the Court should have power to enter up judgment in conformity with its findings.

It is contended on behalf of the appellant that the sections of the act providing for the granting by the Circuit Court of the different counties of the State of licenses to agricultural associations, race courses and driving parks are void for the reason that the duty therein attempted to be imposed upon courts are non-judicial duties, and by reason of those sections being of no effect the remainder of the act becomes also void and of no effect. It is then claimed that because of the failure of this Act, that then Chapter 232 of the Acts of 1894, which was attempted to be repealed by the present act, again becomes the law of this State upon this subject.

For the disposition of this case we do not deem it necessary to either discuss or decide whether or not the sections mentioned impose a judicial or a non-judicial duty upon the

courts, and are, therefore, void. Because if the duty imposed should be held by this Court to be a judicial duty, and, therefore, not affect the validity of said sections, then, of course, it must follow that the appellant was guilty as charged in the second count of the indictment; for the statute requires that before any agricultural association, race course or driving park shall be entitled to the exemption from the provisions of Section 217 (the prohibitory section) that it should make application and be granted a license before it could permit books or pools to be made and sold on its grounds. By the agreed statement of facts it is admitted that the appellant made no such application for dates for the year 1916, and that no license was issued to it for that purpose and for that year. The fact that the appellant did make application for dates in the year 1910, and was refused a license for those dates by the Court, could have no effect, under the statute, toward excusing its failure to make application for dates in 1916, and, therefore, under this view of the law and facts the appellant would clearly have been found guilty.

If, on the other hand, it should be held that the duty imposed upon the courts is a non-judicial duty and, therefore, void, nevertheless we are of the opinion that the prohibitory portion of the act still remains in force and that a verdict of guilty as charged in the first count would be correct.

As to what is the effect upon other and valid portions of a statute when certain parts of the same statute are held to be invalid and unconstitutional, has several times been considered by this Court, and there should not now be any difficulty in stating the general rule, but the difficulty arises, rather, in its application. In *Storck* v. *Baltimore City*, 101 Md. 476, this Court adopted the language used by the Supreme Court of the United States in the case of *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540, in saying: "If different sections of a statute are independent of each other, that which is unconstitutional may be disregarded, and valid sections may stand and be enforced. But if an obnoxious section is of such import that the other sections without it would

cause results not contemplated or desired by the Legislature, then the entire statute must be held inoperative." *State* v. *Benzinger,* 83 Md. 481; *Stiefel's Case,* 61 Md. 144.

Assuming, only for the purpose of a disposition of this case, that the licensing sections are void and inoperative, the inquiry then must be as to whether or not the whole of the act thereby is rendered void and of no effect. The authorities cited above, and, in fact, the authorities practically everywhere, hold that the test is whether or not one section can stand alone as expressing the legislative will; whether or not the law-making body would have enacted one without enacting both or all as a whole.

To arrive at the legislative intent in reference to the subject with which it was dealing, it may be profitable to review the race-track history of this State as applying to gaming. Speaking generally, there was no statute seeking to control or limit such until the adoption of Chapter 206 of the Acts of 1890. This Act, among other things, sweepingly prohibited gaming upon the result of any horse race, unless such was done upon the tract where the race was actually being held. The provisions of that act were amended by enacting Chapter 232 of the Acts of 1894, providing that gaming within the grounds of agricultural associations, driving parks and race courses on the result of horse races on the same day as the races were actually run, provided by the said Act of 1890, should be limited to thirty days in any calendar year.

This Act was amended by the Act now under consideration. And thus has stood the law of the State up to the present, with the exception of several counties to which certain local laws are applicable. It is thus apparent that since the year 1890 the tendency of the Legislature has been towards restricting and limiting what to a great number of the persons has seemed a great evil.

If the contention of the appellant is correct, in that the license portions of the Act are void, and that the Act is not severable and that thus the whole Act should fall, the result

would be that the Act of 1894 would be revived. *State* v. *Benzinger, supra.*

We can not lose sight of that which is a part of the legislative history of the State. It must be remembered how under the Act of 1894 six race tracks were located in one county of the State, upon each of which racing and gaming were carried on for thirty days, or for a total of six months during the winter months of each calendar year. At the session of the same Legislature which passed the Act now before us there was passed a statute, Chapter 13, Acts of 1898, absolutely prohibiting race-track gaming in the county just mentioned, without any qualifications at all, and thus relieved the deplorable conditions that had arisen from the practical working of the Act of 1894. With the expressed opinion of that Legislature as to the abuses which were permitted under cover of that statute, it can fairly be assumed that the same Legislature did not intend that like abuses should spring up in the other counties. It attempted to accomplish this end by passing the present Act, and making the dates for racing and gaming subject to the control of the courts. The main object of all legislation on horse races since 1890 has been to curb this form of gaming. The various statutes clearly prove this, and we are satisfied that the prohibitory section is severable from the license portions of the Act and can, therefore, stand.

It follows, therefore, that whichever view is taken as to the constitutionality of the license section, the appellant was properly found guilty as held by us in a *per curiam* opinion heretofore filed.

> *Judge Briscoe concurred in the conclusion, but dissented from the reasons assigned there-***for.***