People ex rel. Thomsen *v.* Comr. of Correction. **331**

Misc.]                    Supreme Court, April, 1921.

People of the State of New York ex rel. Theodore Thomsen, Relator, *v.* Commissioner of Correction, New York City, et al., Respondents.

(Supreme Court, Kings Special Term, April, 1921.)

Statutes — how far Eighteenth Amendment to the Constitution of the United States and the Volstead Act abrogate state statutes — habeas corpus — Laws of 1920, chap. 911.

The Eighteenth Amendment to the Constitution of the United States and the Volstead Act do not abrogate previously existing state statutes relative to trafficking in liquor, except in so far as they may be in open and direct conflict with the federal statutes. (P. 335.)

All provisions of state laws which tend fairly to the enforcement of said amendment and are not in direct conflict with the Volstead Act, remain unimpaired and may be enforced by the state courts. (Id.)

The statute (Laws of 1920, chap. 911) relating to trafficking in " all distilled and rectified spirits, wine, fermented and malt liquors containing at least one-half of one per centum of alcohol by weight," though not altogether in harmony with the so-called Volstead Act, is void only in so far as it conflicts with the federal statutes. (P. 337.)

All those provisions constituting the greater portion of said statute of 1920 and which authorize the granting of a liquor tax certificate for the sale of liquor containing more than one-half of one per cent of alcohol and not more than two and seventy-five hundredths per cent, violate the Federal Constitution, and any liquor tax certificates issued thereunder are void. (Pp. 337, 338.)

Where certain declarations within the body of said statute of 1920 show a legislative intent to give effect to the Eighteenth Amendment of the Federal Constitution and to absolutely prohibit the sale for beverage purposes of liquor deemed intoxicating, the court is justified in inferring that such was the dominating intent of the legislature; that the provisions authorizing the sale of liquors containing not more than two and seventy-five hundredths per cent of alcohol were subsidiary to the main purpose of the statute, so that even with the unconstitutional

provisions exscinded, the legislature would still have passed the act.   (P. 339.)

Section 8 of said statute of 1920 which though providing for excise taxes on trafficking in liquors makes no provision for the sale of liquor to be drunk on the premises except, in a city of the first or second class, in a 'restaurant where meals are furnished.  *Held,* that as no license could legally be obtained under the statutes to sell, in such a place, liquor of any degree of alcoholic content, said section was separable from and independent of the statutory purpose to permit, under certain restrictions, the sale of so-called non-intoxicating liquors containing up to two and seventy-five one-hundredths per cent of alcohol.   (P. 340.)

An information charging relator with a violation of the statutes of 1920 is not defective because the alcoholic content of the whiskey alleged to have been sold by him was not set forth and upon a traverse to the return to a writ of habeas corpus sued out by relator pending a hearing upon the information before a magistrate he will be remanded.   (Pp. 340, 341.)

TRAVERSE to return to writ of habeas corpus.

Charles E. Russell, for relator.

Harry E. Lewis, district attorney (Harry G. Anderson, assistant district attorney, of counsel), for respondents.

BENEDICT, J.   This case comes before me upon a traverse to the return to a writ of habeas corpus heretofore issued herein.  Relator was arrested for a violation of chapter 911 of the Laws of 1920, relating to trafficking in liquors.  The writ was granted pending the hearing before a city magistrate.  On behalf of the relator it is urged that the information does not charge any crime against defendant because the alcoholic content of the beverage alleged to have been sold by defendant is not set forth, and because the effect of the decision of the Supreme Court of the United States in the *National Prohibition Cases,* 253 U. S. 350, was

to render chapter 911 of the Laws of 1920 void *in toto.*
That act defines liquors as "all distilled or rectified
spirits, wine, fermented and malt liquors containing
at least one-half of one per centum of alcohol by
weight." Intoxicating liquors are defined as those con-
taining more than two and seventy-five one-hundredths
per cent of alcohol by weight, and non-intoxicating
beverages as those containing not more than two and
seventy-five one-hundredths per cent of alcohol by
weight. § 2. The scheme of the act was to require
payment of a tax and the issuance of a liquor tax cer-
tificate in order to obtain authority to sell liquors hav-
ing one-half of one per cent of alcohol and not more
than two and seventy-five one-hundredths per cent.
Any person who traffics in liquors " without having
lawfully obtained a liquor tax certificate " is guilty of
a misdemeanor and subject to fine and imprisonment.
§ 36, subd. 1.

The charge against defendant stated in the informa-
tion is that on January 18, 1921, he " did unlawfully
* * * traffic in liquors without having secured a
liquor tax certificate," and it is further alleged that
the informer saw " three glasses of whisky " sold by
relator to three men, one of whom paid for the same.

The case thus presents a question which, so far as
I am informed, has not as yet been determined in this
state or elsewhere, namely, whether an act in relation
to traffic in liquors passed since the enactment of the
so-called Volstead Act and not altogether in harmony
therewith is void *in toto* or only void in so far as it
conflicts with the federal statute. This involves a
consideration of the meaning of the term " concurrent
power " as used in the Eighteenth Amendment to the
Federal Constitution, concerning which a great deal
of confusion has arisen. Such confusion seems to me
to have been wholly unnecessary, for the proper con-

Supreme Court, April, 1921.          [Vol. 115.

struction of the constitutional provision is a simple matter. Obviously congress is under a duty to enforce the Eighteenth Amendment. The states are under no duty in this respect, but have the privilege, which they may accept or reject at pleasure, of passing acts for that purpose. If any state government elects to remain inactive, its officers and its courts will take no part in the enforcement of the amendment. A state may enact a law which is more or less stringent than the enforcement act of congress. No state can, of course, render lawful, so far as the federal government is concerned, any act proscribed by the federal law, but if the state law be less stringent than the federal law, the state officials will not take cognizance of, and state courts will not punish, acts which are not forbidden by the state law although they may be violations of the federal law. Thus, if the state law declare beverages containing two and seventy-five one-hundredths per cent of alcohol to be non-intoxicating and do not in any way forbid the sale thereof, a person selling a beverage containing that percentage or less of alcohol cannot be prosecuted in the state courts, although he may be in the federal courts, if he sell, within the limits of such state, a beverage containing more than one-half of one per cent of alcohol. But, of course, a state government cannot now grant a license to sell liquor containing more than one-half of one per cent of alcohol, notwithstanding that a state statute may in terms authorize the granting of such license. In other words, the state officials are not authorized to take any affirmative action which would tend to violation of the federal statute, but neither will they take action not authorized or commanded by the state statute. Acts falling within the limbo, so to speak, between the

federal and state statutes can only be prosecuted by federal officials and punished by federal courts.

It has been generally recognized that the Eighteenth Amendment and the Volstead Act did not have the effect of abrogating the previously existing state statutes relative to trafficking in liquors, except in so far as the state acts may be in open and direct conflict with the federal statute. All provisions of the state laws which tend fairly to the enforcement of the Eighteenth Amendment and are not in direct conflict with the Volstead Act remain unimpaired and may be enforced by the state courts. This has been settled by the authorities in several jurisdictions. Probably the most notable case is *Commonwealth* v. *Nickerson,* 128 N. E. Repr. 273, in which the Supreme Judicial Court of Massachusetts in an elaborate opinion by Chief Justice Rugg, held that the liquor law of that state was not abrogated in its entirety by the Eighteenth Amendment and the Volstead Act, but that so far as it was not in conflict with the amendment and the federal act the state act was valid and in force, and hence that a prosecution could be maintained thereunder for selling liquor without a license, although on account of the amendment and the federal act no license could be issued by the state authorities. To the same purport are *Ex parte Guerra,* 110 Atl. Repr. 224, dealing with the effect of the wartime prohibitory act of congress, and *State* v. *Fisher,* 111 id. 432. In *People* v. *Foley,* 113 Misc. Rep. 244, the precise question now before the court was passed upon by Justice Tuthill of this court, sitting in Tompkins county, to the extent that the court in dismissing an indictment found under the former Liquor Tax Law, because that law had been superseded by chapter 911 of the Laws of 1920, directed that the matter be again submitted to the

grand jury under the latter act. Mr. Justice Tuthill quotes from a charge delivered by Chief . Justice Gummere of New Jersey to a grand jury, in which the latter said in substance that the liquor law of New Jersey as in existence when the Eighteenth Amendment and the Volstead Act became effective, remained in force except those provisions relative to the granting of a license, so that it became by virtue of the amendment and the federal legislation an absolute prohibitory act. Reference may also be had to notes in 34 Harvard Law Review, 317 (see N. Y. L. J., Jan. 25, 1921, p. 1410) and 19 Michigan Law Review, 329 (N. Y. L. J., Feb. 5, 1921, p. 1554).

The question here presented differs from that presented in any of the cases above mentioned except *People* v. *Foley, supra,* in that the New York statute under consideration was enacted since the amendment and the Volstead Act, and so the doctrine stated by Chief Justice Rugg in *Commonwealth* v. *Nickerson, supra,* must be considered. He said: " This point is not the same which would arise where a whole statute has been enacted, some parts of which are beyond legislative power under then existing constitutional provisions. In such cases one part of the statute may be valid and enforceable and another part obnoxious to some constitutional inhibition, subject to ' this limitation: That the parts so held respectively constitutional and unconstitutional must be wholly independent of each other. But if they are so mutually connected with and dependent on each other, as conditions, considerations and compensations for each other, as to warrant a belief that the Legislature intended them as a whole, and that, if all could not be carried into effect, the Legislature would not pass the residue independently, and some parts are unconstitutional, all the provisions which are thus dependent,

conditional or connected, must fall with them.' "
P. 282.

There is no question but that the doctrine thus
stated has the support of the authorities in this and
other states. *Hauser* v. *North British & Mercantile
Ins. Co.,* 206 N. Y. 455, 465, affg. 152 App. Div. 91,
95; *People* v. *Harrison,* 170 id. 802, 811; *Daly* v. *Gar-
ven,* 90 N. J. L. 512; *Agricultural Society* v. *State,* 130
Md. 474; *Snetzer* v. *Gregg,* 129 Ark. 542, 548. In *Con-
nolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 565, the
Supreme Court of the United States, by Mr. Justice
Harlan, referring to a statute one section of which
had been held to be unconstitutional, said: " But if
an obnoxious section is of such import that the other
sections without it would cause results not contem-
plated or desired by the legislature, then the entire
statute must be held inoperative." As chapter 911 of
the Laws of 1920 was enacted subsequent to the Eigh-
teenth Amendment and the Volstead Act, and is in its
interpretation of the amendment to some extent in
direct conflict with the Volstead Act — that is as to
what percentage of alcoholic content makes a liquor
intoxicating — can it be upheld as valid in so far as
it is not in conflict with the federal statute? In other
words, can we say that the legislature would have
enacted the remaining parts of the act if the offending
portion had been struck out? The offending portion
in the act in question comprises all those provisions
which authorize the granting of a liquor tax certifi-
cate for the sale of liquor containing more than
one-half of one per cent of alcohol, and not more
than two and seventy-five one-hundredths per cent,
which provisions constitute by far the greater por-
tion of the law. The state authorities, now being
apprised by the decision in *National Prohibition
Cases, supra,* that these provisions of the act are void

Supreme Court, April, 1921. [Vol. 115.

under the Federal Constitution, will, of course, issue no more liquor tax certificates, and presumably any certificates which they may have issued under the act are void. The act is thus made to operate as an absolute prohibition against the sale of all beverages containing more than one-half of one per cent of alcohol, because beverages containing a higher percentage of alcoholic content up to two and seventy-five one-hundredths per cent cannot be sold without a liquor tax certificate, and no liquor tax certificate can now be obtained. That is clearly not the result intended by the legislature.

If we were to stop here, it would follow under the authorities above cited that the entire act of 1920 is void, and hence that the information conferred no jurisdiction on the magistrate to hold the relator. The act contains, however, certain declarations indicative of a legislative intent which might not be inferable from its provisions apart from such declarations. The title reads as follows: "An Act prohibiting the manufacture, sale, transportation, importation, and exportation of intoxicating liquors for beverage purposes, providing a penalty therefor, in relation to traffic in certain non-intoxicating beverages, and amending the liquor tax law and adapting the provisions of such chapter to conform to the eighteenth amendment to the Constitution of the United States."

The introductory portion of section 8 reads as follows: " To enable the state to so regulate the traffic in liquors that only non-intoxicating liquors may be trafficked in for beverage purposes, and to protect the public from abuses of the privilege of trafficking in intoxicating liquors for any purpose, and otherwise to aid in the enforcement of the eighteenth amendment to the United States constitution, excise taxes upon

the business of trafficking in liquors shall be assessed as follows:'' etc.

In section 9-A, imposing a tax on the manufacture and distribution of liquors, it is stated that the purpose is '' to accomplish the objects stated in section eight, and to confine the production and distribution of liquors to purposes which are lawful under this chapter and the constitution of the United States.''

These declarations show a legislative intent to give effect to the Eighteenth Amendment of the Federal Constitution, and to prohibit altogether the sale for beverage purposes of liquor deemed intoxicating and they justify the court in inferring that this was the main or dominating intent of the legislature, and that the provisions authorizing the sale of liquors containing more than one-half of one per cent and not more than two and seventy-five one-hundredths per cent of alcohol, were subsidiary to the main purpose of the act, so that, even with the unconstitutional provisions exscinded, the legislature would still have passed the act. In *Agricultural Society* v. *State, supra,* a statute of Maryland forbade gambling on horse-races except races at agricultural fairs, upon the grounds licensed for the purpose by the circuit court of the county where the grounds were located. The provision for licensing such organizations was claimed to be unconstitutional because it imposed on the courts a non-judicial duty; but it was held that even if such provision were unconstitutional the validity of the remainder of the act was not thereby affected. This case lends some support to the contention that chapter 911 of the Laws of 1920 is valid in its prohibitory measures, although no license can now be issued thereunder for the sale of beverages therein classified as non-intoxicating.

If, however, I am wrong in concluding that all the

provisions of the act of 1920 not in direct conflict with the Eighteenth Amendment and the Volstead Act are operative, I find one provision which seems to be so separable from the rest of the act as to stand alone. Section 8, above referred to, which provided for excise taxes on trafficking in liquors, makes no provision for the sale of liquors to be drunk on the premises except in a city of the first or second class in a restaurant where meals are furnished and having no bar except a service bar for employees, and then only to guests of the restaurant with their meals (Liquor Tax Law, § 8, subd. 5), and it is made unlawful to sell liquor to be drunk on the premises except in conformity with such provision. § 30, subd. A. The purpose of the legislature seems to have been to abolish the institution known as the saloon, where the sole or main object is the sale of liquor and where a person may procure liquor and nothing else if he desire. No license could be obtained under the act of 1920 to sell liquor of any degree of alcoholic content in such a place. This provision of the legislature, therefore, seems to be separable from and independent of the purpose to permit, under certain restrictions, the sale of so-called non-intoxicating liquors containing up to two and seventy-five one-hundredths per cent of alcohol. The information permits the inference that the liquor in question was sold under such circumstances that the sale was in violation of these provisions.

The second objection, that the information is defective in not stating the percentage of alcoholic content of the beverage sold by defendant, is untenable. The word ".whisky" has a well defined meaning as an alcoholic beverage containing a large percentage of alcohol. No liquor containing two and seventy-five one-hundredths per cent or less of alcohol could properly be called whisky. The Eighteenth Amendment to

the Federal Constitution and the Volstead Act have not, as yet at least, changed the ordinary significance of words. Hence, I find no defect in the information in that it did not set forth the alcoholic content of the beverage alleged to have been sold.

Relator remanded.