## GIBSON *v.* STATE
[No. 108, October Term, 1953.]

424

*Decided May 5, 1954.*

The cause was argued before BRUNE, C., J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Albert B. Mosebach,* with whom were *Brown & Mosebach* on the brief, for the appellant.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *J. Albert Roney, Jr., State's Attorney for Cecil County,* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant was indicted by the Grand Jury for Cecil County for "making book" on a horse race. The

date of his alleged offense was August 22, 1953. When called to the stand, he admitted that he had been "making book" for some years; but he contended that bookmaking was not then unlawful in Cecil County. The trial judge overruled appellant's motion to dismiss the indictment, the case went to trial and the jury returned a verdict of guilty. The appellant was sentenced to a fine and imprisonment, but the latter sentence was suspended and the appellant was placed on probation. He first urges here, as in the trial court, that bookmaking was not a crime in Cecil County on August 22, 1953; and second, he contends that the trial court's instruction to the jury so overemphasized the court's view with regard to the applicable law as to be prejudicial to him.

## I.

Some review of the history of anti-bookmaking statutes in Maryland is necessary in determining the law applicable to Cecil County on August 22, 1953. This involves a consideration of the Public General Laws and exemptions therefrom applicable to Cecil County (and certain other counties) and of the Public Local Laws of Cecil County. Unfortunately, a good deal of confusion has arisen, largely from these different types of legislation.

The first Maryland statute specifically prohibiting bookmaking apparently was Chapter 206 of the Acts of 1890, which added a new section designated as 124A to Article 27 of the Code of Public General Laws (of 1888). This was a statewide act which generally prohibited bookmaking, but contained exceptions permitting it at agricultural fairs, race courses and driving parks. Its prohibitory provisions were the precursors of the present Section 306 of Article 27 of the 1951 Code. The act was amended in 1894, chiefly by tightening the exceptions as to both place and time.

This tightening, it seems, was not deemed sufficient, for in 1898 the Legislature passed three statutes dealing with the subject. The first was Chapter 13, which enacted a new local law for Cecil County. (1888 Code of Public

Local Laws, Article 8, Section 415). This flatly prohibited bookmaking in Cecil County, without any exceptions. The reason for it may be found in *Agricultural Society of Montgomery County v. State*, 130 Md. 474, 101 A. 139, (1917), where the opinion of this Court indicates that in Cecil County, "six race tracks were located * * * upon each of which racing and gaming were carried on for thirty days, or for a total of six months during the winter months of each year."

One of the other statutes passed in 1898 was Chapter 290, which was a local law for Anne Arundel County similar to that for Cecil County, except that it permitted bookmaking at the local tracks in one month of the year.

The third of the 1898 statutes was Chapter 285. This repealed and re-enacted with amendments Section 124A of Article 27 and added four new sections, designated as 124B to 124E, inclusive.* The amended section, 124A, which now constitutes Section 306 of Article 27 of the 1951 Code, continued in force and amplified to some extent the prohibitions contained in the 1894 Act. The exceptions permitting bookmaking and betting at tracks were transferred to Section 124B and were made operative only in the counties and only if the premises were licensed by the Circuit Court of the County where the track was located. Sections 124C to 124E related to licensing, but Section 124E also contained provisions exempting Cecil, Washington and Anne Arundel Counties from the operation of the Act. Section 124E was amended in minor respects in 1902, 1904 and 1906; and under the last of these amendments, Chapter 127 of the Acts of 1906, the exemption clause read as follows:

"provided, however, that the provisions of this Act shall not apply to Cecil, Washington or Anne Arundel Counties."

---

* Sections 124A-124E, inclusive, of the Code of 1888 were designated by the following section numbers of Article 27 in subsequent Codes: 1904, Sections 202-206; 1914, Sections 217-221; 1924, Sections 247-251; 1939, Sections 291-295; 1951, Sections 306-310. For simplicity, they are usually referred to herein by their original designations.

(Sections 124C to 124E were expressly repealed as to Harford and Baltimore Counties in 1912 when racing commissions were established for those counties.)

In *Close v. Southern Maryland Agricultural Association*, 134 Md. 629, 108 A. 209 (1919), Section 124B to 124E, inclusive, were held unconstitutional as imposing a non-judicial duty (licensing) upon the Circuit Courts. Such a holding had been more or less foreshadowed in *Agricultural Society of Montgomery County v. State*, 130 Md. 474, 101 A. 139 (1917), in which the prohibitory section (124A) was held valid, regardless of the possible invalidity of the Sections 124B to 124E, and a local law of 1892 applicable to Montgomery and Prince George's Counties (Chapter 386) was considered repealed. This view was adhered to in *Beall v. Southern Maryland Agricultural Association*, 136 Md. 305, 110 A. 502 (1920), which was decided after the *Close* case had determined the invalidity of the licensing sections, and the 1892 local law applicable to Prince George's County was expressly held to have been repealed.

Two weeks after the decision of the *Beall* case, Chapter 273 of the Acts of 1920 was enacted and became effective. This Act created the State Racing Commission and conferred upon that Commission the power to regulate betting on horse races in Maryland.* In *Nolan v. State*, 157 Md. 332, 146 A. 268 (1929), it was held that Section 124A was not repealed by Chapter 273 of the Acts of 1920, and this Court stated that the Maryland Racing Commission Act, which authorized the Commission to issue licenses to conduct races, "was passed in substitution for the four last sections of Chapter 285 of the Acts of 1898 * * *, as those sections authorizing the court to issue such licenses, had been declared unconstitutional."

The question of the survival and effect of the three-county exemption proviso in old Section 124E (Then Section 221 of Article 27) came before this Court in

---

* A similar Act, Chapter 272, creating a racing commission for Prince George's County only was also passed, effective on the same day. It was ineffective because it was at once repealed by Chapter 273.

*O' Connell v. State,* 159 Md. 376, 150 A. 735 (1930), and it was there held that, notwithstanding the fact that the licensing provisions of old Sections 124B to 124E had been held unconstitutional in the *Close* case, these exemptions survived and were effective as a limitation upon the scope of Section 124A. The codifier's change of "Act" to "section" in the exempting proviso in both the 1912-1914 Code and in the 1924 Code was held erroneous and was disregarded. The Court held as to the exempting proviso: "That part of the Section is valid and stands as if it were all that was ever in the section. * * * It was in fact as much a part of *every* Section of the Act as if it had appeared in each Section."

In commenting on the exemptions, the Court said: "As to two of the counties, at least (Cecil and Anne Arundel), it was clearly the intention to exempt them from *all* the provisions of the act, because at the same session of the Legislature local laws were passed for them practically identical with Section 124A, and omitting the other sections. Of course we do not know why there was no similar local legislation for Washington County."

Five years later legislation affecting Washington County was passed. Chapter 390 of the Laws of 1935 was entitled:

> "An Act to repeal and re-enact with amendments Section 251 of Article 27 of the Annotated Code of Maryland (1924 Edition, title 'Crimes and Punishments,' sub-title 'Gaming,' to make said sub-title applicable to Washington County."

In furtherance of this stated purpose the body of the Act amended the exempting proviso of Section 251 (old Section 124E) by omitting Washington County from the exempted counties so that the proviso read: "provided, however, that the provisions of this section shall not apply to Cecil or Anne Arundel Counties." This proviso remained unchanged until Chapter 411 of the Acts of 1953 undertook to repeal Section 307 to 310

inclusive of the 1951 Code (old Sections 124B to 124E).

In *Miggins v. Mallott*, 169 Md. 435, 182 A. 333 (1936), the validity of Chapter 390 of the Acts of 1935 as making bookmaking illegal in Washington County was attacked on several grounds. These were (1) that an Act once held void cannot be revived in whole or in part by repeal and re-enactment, (2) that the Act sought to do an affirmative thing in a negative way and (3) that the Legislature cannot amend one section of the law by repealing and re-enacting another related section. All three contentions were rejected.

The first point was disposed of on the basis of the *O'Connell* case, which had clarified the *Close* case and had held the exempting proviso still in effect. This Court said that the "apparent effect" of the 1935 amendment "was to leave only Anne Arundel and Cecil Counties free from the restrictions contained in section 247" (old Section 124A), and added: "* * * and this court having held that the exempting clause survived, a logical analysis of the action of the Legislature shows that what it effectuated, in reality, by the Act of 1935, was an amendment of the exempting proviso which left Anne Arundel and Cecil Counties exempt, and struck out such exemption as to Washington County." (169 Md. 438, 439.)

The second point turned largely on the sufficiency of the title of the Act, and it was held that "the title in conjunction with the body of the act, brings out with resounding clarity the patent intent, purpose, and effect of the amending statute in no uncertain manner." (169 Md. at 440.)

On the third point, which the Court considered more serious, it was held that it is not always necessary in amendatory legislation, to set out *in extenso* every section of correlative law which may be affected thereby, and the title was held sufficient under Section 29 of Article III of the Maryland Constitution.

The appellant had also contended that if Chapter 390 of the Acts of 1935 was valid, its only effect was to render Section 251 (old Section 124E) inapplicable to

Washington County, leaving the prior exemption applicable to Section 247 (old Section 124A). The Court took the position that its views with regard to the constitutional questions made it unnecessary to discuss this matter further than to refer to its holding that Section 247 (old Section 124A) was then applicable to Washington County and that the appellant was consequently no longer entitled to continue there in the occupation formerly permitted.

It will be noted that the Court placed no emphasis upon the Legislature's use of the word "section" in the proviso in the 1935 Amendment instead of the word "Act," which had been held to be the proper word in the *O'Connell* case, rather than "section," which was there held to have been mistakenly substituted by the codifier. See Code, Article 27: 1904 Ed., Section 206; 1914 Ed. Section 221; 1924 Ed., Section 251. It seems to have been assumed that this change of words had not altered the meaning of the proviso or its application to the then Section 247 of Article 27 (old Section 124A, Section 306 of the 1951 Code,) but the elimination of the Washington County exemption, coupled with the declared purpose of the Act, was held to make Section 247 operative in Washington County. The effect of Chapter 390 of the Laws of 1935 as to Cecil and Anne Arundel Counties was not, of course, directly involved in the *Miggins* case, and the State contends that "section" should be construed literally.

Two later statutes which are now pertinent are Chapter 256 of the Laws of 1945, a local law for Cecil County which repealed the local anti-bookmaking statute, and Chapter 411 of the Acts of 1953, which repealed Sections 307 to 310, inclusive, of Article 27 of the 1951 Code (old Sections 124B to 124E,) along with many other provisions of Article 27 described in the title as "generally obsolete and no longer necessary or desirable among the criminal laws of this State."

Chapter 256 of the Acts of 1945 is entitled:

"AN ACT to repeal Section 162 of Article 8 of the Code of Public Local Laws of Maryland (1930 Edition), title 'Cecil County,' sub-title 'Crimes and Punishments,' sub-heading 'gaming,' relating to gambling."

The title is followed by this recital: "WHEREAS, the State-wide law against gambling makes the provisions of this section unnecessary," and this in turn is followed by the outright repeal of the Section named in the title, The Act became effective June 1, 1945.

The title of this Act meets the requirements of Section 29 of Article III of the Maryland Constitution insofar as the repeal of a prior law is concerned. *County Commissioners of Dorchester County v. Meekins*, 50 Md. 28 (1878). A preamble may be resorted to in aid of construction of a statute if its meaning is doubtful. *C. & O. Canal Co. v. B. & O. R. R. Co.*, 4 Gill & J. 1 (1832) ; *Clark v. City of Baltimore*, 29 Md. 277 (1868). But a preamble forms no part of the act itself, *Hammond v. Frankfeld*, 194 Md. 487, 71 A. 2d 482 (1950) ; *Sutherland, Statutory Construction* (3rd ed.) Sections 4804, 4808; *Endlich, Interpretation of Statutes*, Section 375; and the intention and meaning of the Legislature are to be collected from the law itself and are not to be restrained by anything in the preamble, *Laidler v. Young's Lessee*, 2 Har. & J. 69 (1807).

It will be noted that Chapter 256 of the Laws of 1945 differs markedly from Chapter 390 of the Laws of 1935 in that (1) the preamble assumes that the statewide anti-bookmaking law is already applicable to Cecil County, and (2) the title therefore indicates no intention to bring this about by affirmative action. Where the Legislature acts with respect to a statute already construed by the Court of Appeals, it is presumed to do so with knowledge of such construction. *Herbert v. Gray*, 38 Md. 529.

The views expressed in *Miggins v. Mallott* as to Cecil and Anne Arundel Counties would indicate that the Legislature was in error in assuming (as it did) in

the preamble to Chapter 256 of the Laws of 1945 that the statewide anti-bookmaking laws were in force in Cecil County; and several questions consequently arise as to the effect of the 1945 repeal of the local anti-bookmaking law. That statute, merely by assuming the general State law to be effective in Cecil County, could hardly make it so. See *State v. Kirkley*, 29 Md. 85, 109, where the Court said: "A law which, by its own terms, is to have no effect until the happening of a future contingent event, cannot be made effective *before* the event happens by any Acts or series of supplements passed upon the assumption that the event *has* happened, and that the law is in force. All such Acts, instead of possessing any curative powers, merely multiply errors."

Even if the preamble of the 1945 Act could be regarded as a declaration of a legislative construction of the 1935 Act, it still would not be controlling. *Marburg v. Mercantile Bldg. Co.*, 154 Md. 438, 443, 140 A. 836; *Montgomery Co. v. Bigelow*, 196 Md. 413, 422-3, 77 A. 2d 164. Since we are dealing with a criminal statute, such a construction could have no retroactive effect, for it would then be an *ex post facto* law; and even with its effect wholly prospective, there would still be a grave objection to the title of Chapter 256 of the Acts of 1945 under Section 29 of Article III of the Constitution, if that enactment were said to extend the scope of old Section 124A either as a matter of affirmative legislation or as a matter of curtailing an existing exemption.

If the "statewide" anti-bookmaking law (old Section 124A) was in force in Cecil County in 1945, this could only have been so by reason of the 1935 amendment of old Section 124E and by adopting a literal interpretation of the word "section" as used in that amendment. Such an interpretation would, however, at once raise the question as to why Section 124E had been re-enacted at all (instead of simply repealed), for it would render nugatory the only portion of the Section which, after the *Close* and *O'Connell* cases, still had any vitality—the exempting clause—and which then granted, and could

grant, exemption only from the provisions of *another* Section (124A). Also the adoption of such a literal interpretation of the word "section" would then immediately lead to an apparently insuperable difficulty with the title of the 1935 amendatory Act, for its stated purpose of bringing Washington County within the operation of the general anti-bookmaking law (old Section 124A) would be exceeded by bringing in Cecil and Anne Arundel Counties as well.

Two other possibilities might flow from the 1945 repeal. The first is that the rule might be invoked under which the repeal of a repealing statute has the effect of reviving the original statute, which was Section 124A of Article 27 as enacted by Chapter 232 of 1894. *Brenner v. Plitt*, 182 Md. 348, 34 A. 2d 853. Whether this would accord with the legislative intent, as indicated by the preamble to the 1945 Act, and how far the repeal and re-enactment with amendments of the 1894 law by Chapter 285 of the Acts of 1898 might affect the revival, are questions which, we think, do not require decision in this case.

The second possibility is that the Act of 1945, repealing the local law of Cecil County, should be considered a nullity, because the repeal of the local law without the "statewide" law being applicable to Cecil County would defeat the obvious intention of the Legislature. We have been referred to no case in Maryland dealing with just such a situation, nor have we found one. *Clark v. Tawes*, 187 Md. 195, 49 A. 2d 463, suggests the problem, but there it was not established whether the Legislature knew the facts or not. This Court held that there was no ambiguity in the language of the statute and applied its literal meaning.

There are, however, two Wisconsin cases which dealt with similar problems. In *Kugler v. City of Milwaukee*, 208 Wis. 251, 242 N. W. 481, there had been a general revision of the statutes for the purpose, among others of repealing obsolete provisions. The plaintiff claimed that the enactment of the revision bill did not operate

to repeal a particular sub-section of a prior statute because the revisor erroneously assumed, as shown by notes to his draft which were submitted to and presumably relied upon by the legislature, that the sub-section in question had become obsolete because it had previously been repealed along with the rest of a former Act. This assumption was erroneous because the Court had held in other cases that the sub-section had not been rendered ineffective, but, on the contrary, had been continued in force by one of the provisions of the general repealing statute. The Court conceded that the plaintiff's claim was "not entirely without support in reason," and that in the enactment of a revisor's bill it might be assumed that there was no intention to work any radical change; but it held that, regardless of the revisor's error and despite this presumption as to intention, there was no ambiguity in the statute but a plain declaration of repeal, and that effect had to be given to that declaration. We believe that that conclusion is in accordance with the analogous rule recognized in this State that a preamble may be resorted to in construing an ambiguous statute, but that it cannot control the clear language of the operative provisions of the legislative enactment. To the same effect as the *Kugler* case is *Cavadini v. Larson,* 211 Wis. 200, 248 N. W. 209, also growing out of a general revision of the statutes.

Assuming, without deciding, that bookmaking was not prohibited in Cecil County under either local or general law after the effective date of Chapter 256 of the Laws of 1945, the status of old Sections 124A to 124E (Sections 306 to 310 in the 1951 Code) when Chapter 411 of the Acts of 1953 was enacted was, in brief, as follows:

First, Section 306, the section prohibiting bookmaking (old 124A) was in force in every political unit of the State except in Cecil and Anne Arundel Counties, these exceptions being based upon the construction of the proviso in Section 310 (old 124E) as affecting Section 306.

Second, Sections 307, 308 and 309 (old 124B-124D) and the licensing provisions of Section 310 (old 124E)

were dead for two reasons: first, the decision in the *Close* case above cited, in 1919; and second, the Racing Commission Act of 1920, which had supplanted all of the licensing provisions in Sections 307-310.

Third, only one portion of Section 310 (124E) survived—the proviso as amended in 1935, exempting Cecil and Anne Arundel Counties. This was of almost no practical importance in Anne Arundel County since (a) the local law enacted by Chapter 290 of the Laws of 1898 (codified in Flack's Code of Public Local Laws of Anne Arundel County (1947) as Section 338) was still in existence and its prohibitions were the equivalent of Section 306 of the "statewide" law, and (b) the exception permitting bookmaking at local tracks was superseded by the Maryland Racing Commission Act of 1920, the original statute from which Article 78B of the 1951 Code of Public General Laws is derived.

At the 1952 session of the Legislature, when the same situation had also existed, the General Assembly adopted Joint Resolution No. 3 which requested the Governor to appoint a commission to revise and modernize Article 27 of the Code which contained "many of the State laws defining crimes and providing for their punishment." The preambles recited that Article 27 was long and contained "many obsolete and ambiguous provisions," that it had not been revised since the Code of 1888, that in the more than sixty years since then the General Assembly had added many new criminal laws "while many of the existing laws have become obsolete or outmoded," and concluded with these clauses:

"WHEREAS, it would be highly desirable to eliminate these obsolete sections from Article 27 and also to standardize and simplify those laws which are phrased ambiguously; and

"WHEREAS, attention has also been called to the confusion resulting from those parts of Article 27 which have only partial application throughout the State; now therefore," etc.

It is hardly necessary to point out the aptness of these recitals so far as Sections 307 to 310 (old 124B-124E) of Article 27 are concerned.

The title of Chapter 411 of the Acts of 1953 recites numerous Sections of Article 27 of the Code of 1951, title "Crimes and Punishments," to be repealed by the Act. These are identified by section number and sub-title. Among them are "Sections 307, 308, 309, 310 * * * of said Article, sub-title 'Gaming'. The title of the Act concludes with the clause:

"said sections so repealed being generally obsolete and no longer necessary or desirable among the criminal laws of this State."

Then follow recitals stating that a Commission had been "appointed to revise the criminal laws of this State, in order to remove many obsolete and outmoded provisions and to make the criminal laws more orderly and more brief," and that "this Commission has recommended the repeal of a series of laws presently inapplicable and not now necessary." Section 1 of the Act which actually repeals the Sections in question repeats the descriptions contained in the title.

In this case the appellant attacks the validity of the repeal of the Cecil County exemption upon the ground that the exemption had become engrafted upon Section 306 (old 124A) and could be removed only by a specific amendment of that Section. This same contention was urged in *Miggins v. Mallott,* 169 Md. 435, 182 A. 333, and was there rejected. We adhere to the view expressed in that case. In *Miggins v. Mallott,* the elimination of the exemption was accomplished by the partial repeal of the section which granted it; in this case it is accomplished by the complete repeal of that section. Apart from any question of the sufficiency of the title of the repealing act, there is no reason why a repeal of the whole section should be less effective than the repeal of a part.

In this case, and somewhat more explicitly in a companion case, *White v. State,* 204 Md. 442, 104 A. 2d

810, the title is challenged as misleading. We do not so regard it. After enumerating many sections of Article 27 which the Act is to repeal, each being sufficiently identified (*Dorchester County v. Meekins, supra*), it describes them as "generally obsolete and no longer necessary or desirable among the criminal laws of this State." What we have said of the status of Sections 306-310 (old 124A-124E) in 1952 and early in 1953, in our judgment, warrants this description of Sections 307 to 310, which were repealed by Chapter 411 of the Laws of 1953.

A statute which has become obsolete is not necessarily a nullity. See *Snowden v. Snowden,* 1 Bland (Md. Ch.) 550, at 556; *Gosnell v. B. & O. R. R. Co.,* 189 Md. 677, at 688-9, 57 A. 2d 322. Stating the proposition the other way around, a statute does not have to have become a nullity in order to become obsolete. One meaning of "obsolete" is "out of date." (See *Oxford Eng. Dict., New Century Dict., Funk & Wagnalls New Std. Dict., Webster's New International Dict.*) Though the fact that the reason for a statute has ceased to exist, of course, does not mean that the statute is no longer in force, we think that such a fact is very persuasive in showing that the statute has become at least "generally obsolete." As we have already stated, this Court (in the *Agricultural Society of Montgomery County* case in 1917) pointed out that the reason for the exemption of Cecil and Anne Arundel Counties from the general anti-bookmaking law of 1898 was the passage of their own local acts on the same subject at the same session of the General Assembly. The repeal of the local law in 1945 removed the reason for the exemption in the general law. Certainly, no one reading the recital in the 1945 Act that the state-wide law made the local anti-bookmaking law unnecessary could possibly deduce from that statement any reason why an exemption from the general anti-bookmaking law should be granted.

In view of the long legislative history dating from 1890, spoken of in the *Agricultural Society of Montgom-*

*ery County* case, restricting gambling on horse races, there would be no foundation for an argument that the description of the exemption in Section 310 as "no longer necessary or desirable among the criminal laws of this State" was incorrect or misleading; and no such attack is made.

There is, however, a further attack on the title of Chapter 411 of the Acts of 1953 on the ground that it is too broad in that it includes more than one subject. This attack, too, we think must fall. It would prolong this opinion unduly to review each and every Section of Article 27 of the Code embraced in the general repeal which Chapter 411 undertook to accomplish. If all of the provisions repealed by that Act fall within the description which we have found applicable to the particular section involved in this case, we are of the opinion that there is only one subject dealt with by the statute—the repeal of generally obsolete laws which are no longer necessary or desirable among the criminal laws of this State—and that it is sufficiently stated. See *Neuenschwander v. Washington Suburban Sanitary Comm.*, 187 Md. 67, at 77, 48 A. 2d 593, where the Court said: "* * * If all the sections of a statute, however numerous they may be, are germane and have reference to the subject described in the title, the statute will be considered as embracing but a single subject and as satisfying the requirement of Article III, Section 29, of the Constitution; * * *". Even if some of these sections would not fall within the description given in the title (and we do not intend to intimate any such view), only the repeal of those sections which failed to meet the description would fall, and not the whole statute, since the good and the bad portions would be separable. As was said in *Buck Glass Co. v. Gordy*, 170 Md. 685, at 688, 185 A. 886, "a restriction in the title must either confine the operation of the act to conform to that description, if such a construction is possible, or render the act void to the extent of the conflict."

If each of the sections or groups of sections which were repealed by Chapter 411 had been made the subject of a separate bill, the title of which merely stated the purpose to repeal the section or sections in question and identified them by the number and title of the Article of the Code in which they appeared and by the sub-titles under which they were placed and their section numbers, the title of any such bill would have been clearly valid, without the addition of any descriptive matter; and any descriptive addition would have constituted surplusage, unless misleading. See *Pressman v. State Tax Comm.*, 204 Md. 78, 102 A. 2d 821. The principal usefulness of the descriptive matter at the end of the title of Chapter 411 was to show the basis for lumping together the numerous repeals and thus to comply with the constitutional requirement that there be but one subject and that that subject be stated in the title.

We conclude that the title of Chapter 411 of the Acts of 1953 was not misleading as applied to the repeal of Code 1951, Article 27, Section 310, and that the Act deals with only one subject and sufficiently describes it. Accordingly, at least on and after June 1, 1953, bookmaking in Cecil County was not exempt from the prohibitions and penalties provided by Section 306 of Article 27.

## II.

The appellant's second asserted ground of appeal is that the charge of the trial court was so "intemperate" as to go beyond the limits of a mere advisory opinion on the law and so violated Rule 6 (b) of the Criminal Rules of Practice and Procedure.

At the beginning of his instructions the trial judge had said: "Mr. Foreman, and ladies and gentlemen of the jury, under the Constitution of this State, in criminal cases the jury is made the judge of the law as well as of the facts. It results from that proposition that the Court has no right or authority to give you a binding instruction on the law. Anything that I say to you as to the law applicable to this case is to be regarded by

you as advisory and not as a mandatory instruction."

Then followed one of the two statements to which the appellant objects, which is this: "In my opinion, at the time of the alleged violations as set out in the indictment filed in this case, bookmaking, and the other acts in connection with it, as set out in the various counts in this indictment, was illegal. I have so ruled on a motion filed in this case. I shall not undertake to go into the legal reasoning behind my opinion."

The second matter complained of pertaining to the Court's instructions occurred at the conclusion of the charge when counsel for the appellant requested the Court to tell the jury whether or not there was a law against gambling prior to June, 1953. This the Court declined to do, saying: "I am not going to undertake to elaborate on the various steps in this matter of the law. All that I say to the jury is that at the date of the alleged offenses, bookmaking was illegal in this County. Now Mr. Clerk, send in the indictment and swear the bailiff."

The practice of the trial judge's giving advisory instructions in criminal prosecutions has long been sanctioned in Maryland. *Leon v. State,* 180 Md. 279, 288, 23 A. 2d 706. See also *Slansky v. State,* 192 Md. 94, 63 A. 2d 599. This Court has declared that the trial judge has "a right to address advisory remarks to [the jury], and it [is] their duty to accept them as such and then to subject them to the test of their own independent judgment." *Dick v. State,* 107 Md. 11, 20, 68 A. 286. Indeed, the lay character of the jury makes it desirable that they should have the advisory aid of the judge in respect to questions of law. *Beard v. State,* 71 Md. 275, 280, 17 A. 1044.

The first of the comments quoted above, made immediately after the Court had stated that his opinion was only advisory, could not, we think, have been understood by the jury otherwise than as qualified by what the Court had just said. Nor, in our view, does the fact that he referred to having ruled on this legal question at

an earlier stage of the case detract from his explicit statement that his views on the law were merely advisory or indicate any impropriety in the charge. His second comment on the law, we think, was also sufficiently covered by his opening remarks which expressly covered "anything" which the Court might say to the jury "as to the law applicable to this case." It was merely a repetition in response to the appellant's inquiry of the view which the Court had already expressed immediately after his explicit statement that his views of the law were advisory.

Nothing in the Judge's instruction to the jury requires a reversal of the judgment in this case.

*Judgment affirmed, with costs.*