Dear Honorable Shane Pendergrass
You have requested our opinion concerning the impact of last year's Truth in Taxation Act on the annual charge imposed on real property in Columbia by the Columbia Park and Recreation Association, Inc. ("the Columbia Association").
In our opinion, the 2000 legislation has no impact on the charge made by the Columbia Association. In particular, it does not affect the valuation of property used to compute that assessment or the amount of the charge.[1]
 I Background
A. The Columbia Covenants
The Columbia Association is a nonprofit membership corporation that is responsible for developing community and recreational facilities, operating various programs and services, and maintaining park land and open space in Columbia, a planned community in Howard County. In 1966, the developer of Columbia established certain covenants applicable to real property in the community. Under those covenants, each lot in Columbia is subject to an annual charge, limited to a maximum of $.75 per $100 of assessed valuation. The Columbia Association uses the proceeds of this assessment to pay its debt service and to finance its activities. SeeFagan v. Howard County, 304 Md. 250, 498 A.2d 639 (1985): Columbia Park Recreation Ass'n, Inc. v. Olander, 287 Md. 1, 410 A.2d 592 (1980).
The Columbia covenants provide that the annual charge is to be based on the "assessed valuation" of a property, which is defined as "the highest valuation placed on land and permanent improvements in each year for . . . State real estate tax purposes . . . ."[2] However, that definition of the valuation of property has been modified by statute.
B. State Legislation Affecting the Columbia Association Charge
After the creation of the Columbia covenants, the State changed the method by which it assessed the value of real property for purposes of county and State property taxes.
Apparently in an effort to protect the Columbia Association and similar organizations from the adverse consequences of some of these changes, the Legislature mandated the use of a particular assessment ratio by such organizations regardless of the ratio that the covenants would otherwise require. Beginning in 1978 the Legislature accomplished this in uncodified provisions of several laws that amended the State property tax statutes.[3] The most recent of those provisions states that:
 Notwithstanding the [amendments to the property tax laws in] § 2 of this Act, the valuation of real property for the purposes of any private contract or covenant which was entered into or imposed prior to July 1, 1978, the effective date of Chapter 175 of the Acts of the General Assembly of 1978, for the purpose of providing funds for public facilities or services through the imposition of payments or charges based on valuations made by the State for real estate tax purposes shall be and remains 50 percent of current value.
Chapter 12, § 5, Laws of Maryland 1990 (emphasis added). In 1990, the effect of this provision was to direct the Columbia Association to use a 50 percent assessment ratio for its charge, rather than the 40 percent ratio in the State property tax law that otherwise would have been applicable under the covenants.
Attorney General Burch assessed the constitutionality of the original version of this provision in 1978 and concluded that it was not an unconstitutional impairment of contract. See 63 Opinions of the AttorneyGeneral 41 (1978). In 1991, this Office again reviewed that issue and reached the same conclusion.[4] See Letter of Jack Schwartz, Chief Counsel, Opinions and Advice, to Delegate Virginia M. Thomas dated August 26, 1991, at pp. 2-3.
C. The 2000 Truth in Taxation Act
Last session, the General Assembly enacted the Truth in Taxation Act. Chapter 80, Laws of Maryland 2000. That legislation raised the assessment ratio for real property taxes from 40 percent to 100 percent and provided for an offsetting reduction in tax rates. The General Assembly made clear in uncodified provisions of that law its intent that the bill be "revenue neutral" and that it "not be construed to alter or affect the fiscal impact of any provision of State or local law or county or municipal charter on any computation prescribed by law or regulation that uses property tax assessments as part of the computation." Chapter 80, § 7(2), (4). In the same vein, that legislation amended the Tax-Property Article as follows:
 For the purpose of construction of any State or local law, an assessment of real property for a taxable year beginning after June 30, 2001 that is compared to an assessment that is effective on or before September 30, 2000, shall be computed so that:
 (1) the two assessments are compared at the same percent of value, and any tax rate applied to the assessments is adjusted proportionately, if necessary; and
 (2) there is no change in the amount of tax due, tax relief authorized, computation of assessment ratio, or other computation based on assessments solely as a result of the change in the method of computing assessments effective October 1, 2000.
Chapter 80, § 1, Laws of Maryland 2000, adding Annotated Code of Maryland, Tax-Property Article ("TP"), § 8-422.
 II Analysis
Under a straightforward reading of § 5 of the 1990 law, the assessment ratio for purposes of the Columbia covenants remains at 50 percent. Section 5 of the 1990 statute states that the valuation of real property for charges such as those imposed by the Columbia covenants "shall be and remains 50 percent of current value" (emphasis added). This mandatory provision thus overrides the direction in the Columbia covenants to select the "highest valuation" used for purposes of State and county property tax assessments. The validity of this provision was the subject of the earlier opinion and advice letter of this Office and is not at issue for purposes of this opinion. The only question is thus whether the 2000 legislation repealed the 1990 statute or rendered it obsolete.
It has been suggested that the 1990 provision may no longer be effective, on the ground that it is obsolete and was implicitly repealed by the Truth in Taxation Act. The argument is based on the premise that § 5 was tied to the particular amendments of the property tax law made in other sections of the 1990 legislation, and that the explicit repeal of those sections by the Truth in Taxation Act also implicitly repealed the savings clause in § 5 of the 1990 law.
A statute is rendered "obsolete" only when changed conditions make it impossible for the statute to have any further application. Because it is generally the province of the legislature to determine when a statutory provision has outlived its usefulness, courts are reluctant to disregard a statute on the grounds of obsolescence. See 2 Sutherland StatutoryConstruction § 34.05 (5th ed. 1993). Moreover, even if a particular statutory provision becomes obsolete, it "is not necessarily a nullity."Gibson v. State, 204 Md. 423, 438, 104 A.2d 800 (1954) (holding that explicit repeal of obsolete exemption was properly part of bill). Thus, even a provision deemed obsolete may remain effective until repealed.Id.
In our opinion, nothing in the 2000 legislation renders it impossible for § 5 of the 1990 law to remain effective. The General Assembly explicitly stated its intention that the Truth in Taxation Act "be revenue neutral." See Chapter 80, § 7(2), Laws of Maryland 2000; Fiscal Note for Senate Bill 626 (2000). Moreover, the Act did not purport to alter an assessment ratio mandated by other law, such as the provision applicable to the Columbia covenants. Indeed, the Act specifically states that "[f]or the purpose of construction of any State . . . law, an assessment of real property . . . shall be computed so that . . . [t]here is no change in the amount of tax due, . . . computation of assessmentratio, or other computation based on assessments" solely as a result of the Act. TP § 8-422(2). Accordingly, it is clear the General Assembly did not intend to displace the assessment ratio specified in § 5 of the 1990 law for purposes of the Columbia Association charge.
Finally, repeals by implication are disfavored. See, e.g., State v.Harris, 327 Md. 32, 38-39, 607 A.2d 552 (1992); Farmers MerchantsNational Bank v. Schlossberg, 306 Md. 48, 61, 507 A.2d 172 (1986). Moreover, as noted above, the various savings clauses in the Truth in Taxation Act militate against that interpretation and in favor of the conclusion that the mandate in § 5 of the 1990 statute remains effective. Thus, in our opinion, the Truth in Taxation Act did not affect § 5 of the 1990 law with respect to the Columbia covenants.
We understand that the Columbia Association has already mailed bills that compute the annual charge based on an assessment ratio of 100 percent instead of 50 percent. We also understand that the rate of the charge was reduced by half to compensate for the change in assessment ratio, with the result that the amount of the charge was not affected by the use of a new assessment ratio.[5] Although we disagree with the conclusion apparently reached by the Association that the Truth in Taxation Act requires it to use the 100 percent ratio, we have no reason to question that this action was a good faith effort to give effect to the perceived import of recent legislation. We also note that this action did not have the effect of increasing any individual charge.
 III Conclusion
For the reasons stated above, it is our opinion that the Truth in Taxation Act of 2000 has no impact on the assessment ratio employed to compute the charge imposed by the Columbia Association or on the amount of the charge itself.
 J. Joseph Curran, Jr.Attorney General
 Robert N. McDonaldChief CounselOpinions Advice
[1] This conclusion is consistent with a letter of advice previously provided to you. See Letter of Assistant Attorney General Robert A. Zarnoch to Delegate Shane Pendergrass dated June 30, 2000.
[2] The pertinent sections of the covenants read as follows:
 Section 2.01. For the purpose of providing funds for use as specified in Article IV hereof, the Board shall in each year, commencing with the year 1966, assess against the Assessable Property a charge (which shall be uniform with respect to all Assessable Property) equal to a specified number of cents (not in excess of seventy-five cents) for each One Hundred Dollars ($100) of the then current "Assessed Valuation," as hereinafter defined, of the Assessable Property. In making each such assessment, the Board shall separately assess each Lot based upon its Assessed Valuation, and each such Lot shall be charged with and subject to a lien for the amount of such separate assessment which shall be deemed the "Annual Charge" with respect to such Lot.
 Section 2.02. As used herein, the term "Assessed Valuation" shall mean:
 (i) the highest valuation placed on land and permanent improvements in each year for Howard County or Maryland State real estate tax purposes, whichever may be higher, as assessed or determined, in such manner as may from time to time be provided by applicable law, regardless of any decrease of such valuation during such year by reason of protest, appeal or otherwise . . . .
Deed, Agreement and Declaration of Covenants, Easements, Charges and Liens, Article II, §§ 2.01, 2.02 (December 13, 1966).
[3] See Chapter 175, § 2, Laws of Maryland 1978; Chapter 314, § 2, Laws of Maryland 1979; Chapter 8, § 19, Laws of Maryland 1985; Chapter 12, § 5, Laws of Maryland 1990.
[4] You have not asked that we revisit the constitutionality of that legislation and we have not done so. However, we have no reason to question the conclusions previously reached by this Office.
[5] In particular, we understand that, when it switched from 50 percent to 100 percent valuations, the Columbia Association simultaneously reduced the rate of the charge from 73~ per $100 valuation to 36.5~ per $100 valuation. Mathematically, these changes offset each other and the actual assessment of a particular property remains the same.
 *Page 66