# THE MOUNT VERNON-WOODBERRY COTTON DUCK COMPANY *vs.* FRANKFORT MARINE ACCIDENT AND PLATE GLASS INSURANCE COMPANY.

*Constitutional Law—Title of Statute—Act Repealing and Re-enacting Prior Act Whose Title Was Defective—Act Regulating Child Labor in Factories by Prohibition Thereof Under a Certain Age—Classification of Factories and Counties.*

Under an Act entitled an Act to regulate the employment of children in mills and factories, the statute may prohibit wholly the employment of children under a certain age as part of the regulation.

If the title of the Act contains a sufficient description of its subject-matter, under the constitutional provision relating to titles, its validity is not affected by the fact that the title also proposes to repeal and re-enact a prior Act whose title was defective.

When the title of an Act indicates that it applies to the whole State, the fact that in the body of the Act some of the counties of the State are excepted from its operation does not render the title misleading.

The title of the Act of 1902, Chap. 566, is "An Act to repeal and re-enact section 4 of Art. 100 of the Code of Public General Laws as enacted by Chapter 317, Acts 1894, title 'Work—Hours of in Factories,' regulating the employment of children." The body of the Act prohibits the employment in any mill or factory, other than factories of canned goods, of any person under fourteen years of age unless such child is the only support of a widowed mother or invalid father or solely dependent on such employment for self-support. *Held,* that this prohibition of work by children under fourteen years of age is valid as a part of the Act regulating the employment of children.

The Act of 1902, Chap. 566, prohibits the employment of chil-
dren under fourteen years of age in mills and factories in
Baltimore City and in three or four other counties, but allows
such children to be employed in the other counties of the
State, and also in canning factories. *Held,* that this Act is
not in conflict with the Fourteenth Amendment of the Fed-
eral Constitution, since the Court cannot say that the placing
of canning factories in one class and all other factories in
another, or the distinction between factories in some coun-
ties and those in others, is arbitrary and unreasonable.

In a policy indemnifying a factory company against loss aris-
ing from its liability for damages in case of injury suffered
by any employee, it was stipulated that the policy should not
apply to any injury suffered by a child employed by the as-
sured, contrary to law. *Held,* that this stipulation is a bar to
the recovery of damages paid by the assured on account of
an injury suffered by a child employed in violation of the
statute regulating the employment of children in factories.

*Decided December 1st, 1909.*

Appeal from the Superior Court of Baltimore City (EL-
LIOTT, J.).

The cause was argued before BOYD, C. J., BRISCOE,
PEARCE, SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*Edward Duffy* (with whom were *Bond & Robinson* on the
brief), for the appellant.

*Geo. Dobbin Penniman,* for the appellee.

THOMAS, J., delivered the opinion of the Court.

This is an action brought by the Mount Vernon-Woodberry
Cotton Duck Company against the Frankfort Marine Acci-
dent and Plate Glass Insurance Company to recover on a
policy of indemnity issued by the defendant to the plaintiff
whereby the defendant, in consideration of the warranties

therein contained and of the sum of $1,650.00, agreed to in-
demnify the plaintiff "for the term of twelve months, begin-
ning on the 20th day of March, 1906, at noon, and ending
on the 20th day of March, 1907, at noon, * * * against loss
arising from legal liabilities for damages on account of bod-
ily injury or death suffered by any employee or employees
of the assured resulting from any and every accident of what-
soever nature or cause happening in, upon or about the prem-
ises and in the business of the assured as described on the
back" of the policy.

Issues were joined on the pleas of "never promised as
alleged" and "never indebted as alleged," and by agreement
of counsel defendant's third plea was withdrawn, "all errors
in pleading" were waived, and the case was submitted to the
Court on an agreed statement of facts by the following agree-
ment:

"Eighth: It is further agreed that Article 100 of the Code
of Public General Laws shall be considered in evidence, and
that the Acts of 1894, Chapter 317, and 1902, Chapter
566, shall be considered in evidence, and they may
be read in the lower Court and in the Court of
Appeals, either from the printed volumes or from certified
copies thereof or of parts thereof; and it is further agreed
that this case shall be tried before the Court, and that it is
submitted to the Court for its opinion on the law, and the
Court is requested to render a judgment in accordance with
its said opinion, and if the said opinion of the Court on the
facts hereinbefore stated and agreed to is that notwithstand-
ing the terms of paragraph 11 of the aforesaid policy, the
said policy applies to and covers the injury suffered by said
John H. Ball, the judgment of the Court shall be for the
plaintiff for an amount equal to the amount paid in satisfac-
tion of the judgments aforesaid, to wit, the sum of $3,150.00,
with interest thereon from March 1st, 1908, plus the amount
of $313.67 paid as aforesaid by the plaintiff for costs, and
the amount of $150.00 paid as aforesaid by the plaintiff for
counsel fees, either or both, provided the Court shall be of

opinion that under the terms of said policy the plaintiff is entitled to be reimbursed for either or both of said amounts, with interest on the amount so allowed on account of fees and costs from March 1st, 1908.

"It is further agreed that either party shall have the right to appeal from the judgment rendered."

By sec. 11 of the policy it was agreed: "That this policy shall not apply to or cover any injury suffered by a child em ployed by the assured contrary to law, nor to any child under ten years of age where no statute restricts the age of employ· ment, nor to any injury suffered by others caused by or result- · ing from such employment."

It further appears from the statement of facts that the plaintiff, who was carrying on in Baltimore City the business of manufacturing cotton duck, on the 26th of June, 1906, employed one John H. Ball to work in its mill in said city, known as the "Meadow Mill." At the time of such employ ment John H. Ball was between eleven and twelve years of age (of which fact the plaintiff had knowledge before the accident), having arrived at the age of eleven years on the twentieth of March, 1906, and resided in Baltimore with his father, John T. Ball. He was not dependent upon such employment for self-support, and just prior thereto had been attending a public day school, which had closed for the summer vacation, and it was at the request of his father, who was not an invalid and was in the employ of the plaintiff, that he was employed to work in the mill during said vacation. While so employed, and while working for the plaintiff on the premises mentioned in the policy, the said John H. Ball, on the 29th of June, 1906, had his right hand cut off by coming in contact with a revolving fan in said mill, and subsequently brought suit against the plaintiff to recover for such injury. His father, John T. Ball, also brought suit against the plaintiff to recover the loss he sustained by reason of said accident. The defendant was given due notice of the accident and of the suits, as required by the policy, but refused to defend the suits on the ground that John H. Ball

had been employed by the plaintiff contrary to law.  These suits were defended by the plaintiff, but resulted in a judgment in favor of John H. Ball for $2,500.00 and $281.92 costs, and judgment in favor of John T. Ball for $800.00 and $31.75 costs.   The judgment in favor of John H. Ball was entered satisfied upon payment by the plaintiff of $2,350.00 and costs, and the judgment in favor of John T. Ball was paid in full by the plaintiff, and it was for the recovery of these amounts so paid by the plaintiff and the sum of $150.00 paid by plaintiff to counsel for defending such suits, that this action was brought.

The appeal is from a judgment of the Court below in favor of the defendant, and it is conceded by counsel for the appellant that if the Act of 1902, Ch. 566, is a valid enactment, there was no error in that judgment.

The contention of the appellant is: (1) that the Act of 1894, Ch. 317, is unconstitutional because its title is defective, and that the Act of 1902, Ch. 566, is based on the Act of 1894, and is therefore also unconstitutional; and (2) that the Acts of 1894 and 1902 are in conflict with the Fourteenth Amendment to the Constitution of the United States.

(1) Act of 1894, Ch. 317, is as follows: An Act to amend Article one hundred of the Code of Public General Laws of Maryland, title "Work, Hours of, in Factories," by adding thereto a section, to be known as section 4, regulating the employment of children under twelve years of age, in mills and factories in this State.

Section 1. *Be it enacted by the General Assembly of Maryland,* That Article one hundred of the Code of Public General Laws of Maryland be amended by adding thereto the following section, to come in immediately after section three of said Article, and to be known as section four:

Sec. 4. No proprietor or owner of any mill or factory in this State, other than the establishments for manufacturing canned goods, or manager, agent, foreman or other person in charge thereof, shall after the first day of October, in the year eighteen hundred and ninety-four, employ or retain in

employment in any such mill or factory, any person or persons under twelve years of age; and if any such proprietor or owners of any such mill or factory, or manager, agent, foreman or other person in charge thereof, shall wilfully violate the provisions of this section, he shall be fined not less than one hundred dollars for each and every offence so committed, and pay the costs of prosecution, one-half of the fine to go to the informer and the other half to the school fund of the county or city in which the offence shall have been committed; provided, that nothing in this Act shall apply to Frederick, Washington, Queen Anne's, Carroll, Wicomico, Caroline, Kent, Somerset, Cecil, Calvert, St. Mary's, Prince George's, Howard, Baltimore, Worcester and Harford Counties.

It is claimed, upon the authority of *Whitman* v. *State,* 80 Md. 410, that it is an attempt, under an Act entitled an Act to *regulate* the employment of children under twelve years of age, to *prohibit* the employment of children under that age, and, for that reason, is in violation of section 29 of Art. 3 of the Maryland Constitution, which requires the subject of an Act to be described in its title. Assuming this contention to be sound, the Act of 1894 was repealed and re-enacted by the Act of 1902, ch. 566, the title of which is "An Act to repeal and re-enact section 4 of Article 100 of the Code of Public General Laws, as enacted by Chapter 317, Acts of 1894, title 'Work Hours of, in Factories,' regulating the employment of children," and which prohibits the employment in any mill or factory, other than establishments for the manufacturing of canned goods, of any person under fourteen years of age, "unless such child is the only support of a widowed mother or invalid father, or is solely dependent upon such employment for self-support." It cannot be said, nor do we understand counsel for the appellant as seriously contending, that under an Act entitled an Act to regulate the employment of children *generally* the employment of children under a certain age may not be prohibited, as a part of the regulation. In the case of *Osborn* v. *Charlevoix,* 114 Mich. 655, the Court was considering an Act entitled "An

Act to regulate the catching of fish in the waters of this State, by the use of pound or trap nets, gill nets, seines, and other apparatus," and said: "The alleged unconstitutionality of Act No. 151, is ascribed to a defective title, in that it prohibits, during a portion of the year, while it professes to regulate, the taking of fish. It is said that this prohibition is not mentioned in the title, and, again that prescribing certain methods and apparatus is a regulation, which is the only object stated in the title. We may reasonably conclude that the object of this, like other fish laws, is to preserve the industry of fishing, and a valuable food product, by protecting fish during certain seasons, and preventing the taking of young fish that have not reached a proper size. Any provision that tends to these ends, which recognizes a reasonable exercise of the right to take fish, and prescribes rules under which it may or may not be done, is within the term 'regulation.'" That case fully accords with the views expressed by this Court in *Whitman* v. *State, supra,* where it is said that, "Any provision which was necessary or appropriate to carry into effective operation a scheme embodied in an Act whose title declared that it was an Act to *regulate* liquor traffic in that town could have been constitutionally included under that title. But the total *abolition* of the liquor traffic is in no sense a regulation of it." The Act of 1902 does not *prohibit* the employment of children, but *regulates* the employment of children by prohibiting the employment of children under a certain age, except under certain circumstances.

But it is insisted that the title of the Act of 1894 is bad, and that the Act of 1902 is based on the Act of 1894, and must, therefore, fall with it. There would be much force in this contention if the title of the Act of 1894 was defective, and the title of the Act of 1902 simply referred to the title of the former Act, for in that case as the title of the former Act was insufficient the title of the latter would also fail to give proper notice of the legislation proposed. But the title of the Act of 1902 not only states that it is an Act to repeal and re-enact section 4 of Article 100 of the Code as enacted

by the Act of 1894, but that it is an Act regulating the employment of children, which it does in the body of the Act by prohibiting the employment of children under fourteen years of age, etc.  If an Act contains in its title a sufficient description of the subject of the Act its validity is not affected by the fact that it also proposes in its title to repeal and re-enact, and does repeal and re-enact an Act the title of which was defective, nor is it dependent in any sense for its validity upon the Act so repealed and re-enacted.  Much discussion may be found in the reported cases as to when and how an unconstitutional Act may be *amended,* but we find it nowhere intimated that an Act unconstitutional because of a defective title may not be repealed and *re-enacted* by an Act the title of which clearly indicates its subject-matter.  *State* v. *Corker,* 60 L. R. A. 564 and note.  Where a law is repealed and re-enacted under a title that discloses its subject the new law has all the force and effect of valid independent legislation.

The title of the Act of 1902 is claimed to be misleading also because it indicates that the Act is to apply to the whole State, while in the body of the Act many of the counties in the State are excepted from its operation.  Much of the legislation in this State has been enacted in the same way, and we know of no instance in which its constitutionality has been seriously questioned on that ground.  The Act of 1898, Ch. 206, entitled "An Act to repeal and re-enact with amendments sections 13, 14 and 15 of Article 99 of the Code of Public General Laws, title 'Wild Fowl, Birds and Game;' and to add certain new sections to said Article, for the better protection and preservation of birds and game animals," etc., in its second section repeals all laws inconsistent with its provisions except the local laws of Kent and a number of other counties of the State relating to game and wild fowl, and this Court, in *Stevens* v. *State,* 89 Md. 674, after disposing of the objections made by counsel, said, in respect to that Act: "It cannot be successfully contended that the law now under consideration is unconstitutional, because it operates

unequally upon the inhabitants of the several parts of the State, and that it discriminates against the residents of Baltimore City, by reason of the fact that a number of counties are excepted from its operation.  It has long been the policy of the State of Maryland to enact local laws affecting only certain counties, or to exempt particular counties or localities from the operation of general laws or of some of the provisions thereof.

"Nor is the law at variance with the provisions of Article 3, section 29 of the State Constitution, because it embraces more than one subject and has a misleading title.  The law in its title is described as 'An Act to repeal and re-enact sections 13, 14 and 15 of Article 99 of the Code of Public General Laws, title Wild Fowl, Birds and Game, and to add certain new sections for the better protection and preservation of birds and game animals.'  The several sections of the Act relate to and are germane to one subject-matter, the protection and preservation of birds and game animals, which is described in its title, and this is all that the Constitution requires.  'While the title must indicate the subject of the Act, it need not give an abstract of its contents nor mention the means and method by which the general purpose is to be accomplished.'  *M. & C. C. of Baltimore* v. *Reitz,* 50 Md. 579."

(2)  In their objection to the Act of 1902, on the ground that it is in conflict with the Fourteenth Amendment to the Federal. Constitution, counsel for the appellant do not challenge the power of the Legislature to prohibit the employment of children under fourteen years of age in mills and factories, but they contend, as stated in their brief, that the Act is "unconstitutional by reason of the classification between owners of canning factories and owners of all other factories, and between mill owners in Baltimore City and three or four counties and in all the other counties."

The Act in question was passed in the exercise of the police power of the State, and the authority of. the Legislature, in the exercise of that power, to make regulations for certain

parts of the State and for certain classes of its citizens, can no longer be questioned, so long as the classification does not appear to be unreasonable or arbitrary. *Stevens* v. *State, supra; State* v. *Broadbelt,* 89 Md. 565; *Cochran* v. *Preston,* 108 Md. 220; *Mo.* v. *Lewis,* 101 U. S. 22; *Barbier* v. *Connelly,* 113 U. S. 27; *L'Hote* v. *New Orleans,* 177 U. S. 587.

In *Ex parte Weber,* 86 Pacific Rep. 809, the Court, referring to a law regulating the employment of children, said: "In matters of this kind the Legislature has large discretion. It must determine the degree of injury to the health or morals which the different kinds of employment inflict upon the child and the corresponding necessities for protecting the child from the effects thereof, and unless its decision in that regard is manifestly unreasonable, there is no ground for judicial interference." In *Cooley's Constitutional Lim.* (6th Ed.), page 216, it is said: "The question whether a law be void for its repugnancy to the Constitution is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in doubtful cases." And again, on page 220, that the Courts "must assume that legislative discretion has been properly exercised. If evidence was required, it must be supposed that it was before the Legislature when the Act was passed." In *ex parte Spencer,* 86 Pac. Rep. 896, it was said that: "The presumption always is that an Act of the Legislature is constitutional, and when this depends on the existence or non-existence of some fact, or state of facts, the determination thereof is primarily for the Legislature; and the Courts will acquiesce in its decision, unless the error clearly appears." In the case of *Holden* v. *Hardy,* 169 U. S. 395, the Court, referring to an Act limiting the hours of labor in underground mines, etc., said: "These employments, when too long pursued, the Legislature has judged to be detrimental to the health of the employee, and so long as there are reasonable grounds for believing that this is so, its decision upon this subject cannot be reviewed by the Federal Courts." And in the case of *Cochran* v. *Preston, supra,* this Court said that: "The presumption in favor of the validity of the statute

should prevail, unless the lack of constitutional authority is clearly demonstrated."

The conditions under which children labor in canning factories may be entirely different from the conditions under which they are required to work in other factories or mills, and much less injurious or dangerous to health, and we must assume that the Legislature in exempting from the operation of the Act of 1902 "establishments for manufacturing canned goods," did so for reasons entirely consistent with the purpose of the Act to protect the health of the children of the State, and that it acted upon knowledge possessed by it that fully justified the exemption of such establishments from the regulations applicable to other factories and mills. The Legislature has determined that it is injurious to the health of children under fourteen years of age to work in mills and factories, other than canning factories, and how is this Court to determine that this is not so? We cannot assume that the Legislature acted arbitrarily or unreasonably, but must presume, in the absence of any indication to the contrary, that the classification was based on reasonable grounds.

In the cases of *Luman* v. *Hitchens Bros. Co.,* 90 Md. 14, and *Railway* v. *Ellis,* 165 U. S. 150, cited and relied on by counsel for the appellant, the statutes considered were not police regulations, and the Court held that their provisions were *manifestly* arbitrary and unreasonable. In *Luman's Case,* CHIEF JUDGE McSHERRY said: "This attempted classification in the Act of 1898 is obviously arbitrary, and was not made to rest, as we have above pointed out, upon some difference which bears a reasonable and just relation to the act—the thing—in respect to which the classification is proposed. The statute was not passed in the exercise of the police power of the State, as was the case in *State* v. *Broadbelt,* 89 Md. 565, and *Atch., T. and S. F. R. R.* v. *Matthews,* 174 U. S. 96, and is repugnant to the Fourteenth Amendment."

The classification made by the Act of 1902 cannot be said to be "obviously arbitrary," and we must hold, for the rea-

sons stated, that the Act is free from any of the infirmities suggested by the appellant, and that, under section eleven of the policy, its provisions constitute a complete bar to a recovery by the plaintiff.

The judgment of the Court below must, therefore, be affirmed.

*Judgment affirmed with costs.*