NATIONAL CAN CORPORATION *v.* STATE TAX COMMISSION

[No. 29, September Term, 1959, Adv.]

420

*Decided July 9, 1959.*

*Motion for stay of execution of mandate filed August 5, 1959, granted and order signed, September 1, 1959.*

The cause was argued before BRUNE, C. J., and HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Herbert M. Brune* and *M. William Adelson* for appellant.

*John Martin Jones, Jr., Assistant Attorney General,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for appellee.

BRUNE, C. J., delivered the opinion of the Court.

The appellant, National Can Company, (National) seeks to set aside the assessment for the year 1957 of its tangible personal property, consisting of furniture, fixtures and equipment, manufactured products and raw material, tools and machinery used for manufacturing, and tools and machinery not used for manufacturing. The aggregate assessed value of such property is somewhat in excess of $5,200,000, the great bulk of it being placed upon manufactured products and raw material (over $3,737,000) and tools and machinery used for manufac-

turing ($1,432,000). The assessments were made by the appellee, the State Tax Commission (the Commission). The case turns upon the validity of Chapter 73 of the Acts of 1958 (the Act), which the trial court upheld.

The Act begins with nine recitals: (1) a reference to the decision by this Court of the case of *Sears, Roebuck & Co. v. State Tax Commission* (214 Md. 550), 136 A. 2d 567; (2) a summary of the holding therein—that real property and stock in business have been classified alike by the General Assembly for assessment purposes and that the same allowance for inflation must be made in respect of stock in business as in respect of real property; (3) that Article 15 of the Maryland Declaration of Rights empowers the General Assembly to provide for the separate assessment of land and the classification and sub-classification of personal property; (4) that "it is the intention of the General Assembly to classify real property separate and distinct from personal property, and to separately sub-classify certain classes of personal property for assessment purposes, to the end that an allowance for inflation may be made in respect to real property, but not in respect to personal property;" (5) that "it is the belief of the General Assembly that the natural and inherent differences between real and personal property, and the peculiarities of certain classes of personal property require and justify separate classification and sub-classification for assessment purposes as aforesaid, and require and justify the making of an allowance for inflation in respect to real estate assessments but not in respect to personal property assessments;" (6) that "the State will lose substantial revenues as the result of the Sears Roebuck decision unless remedial legislation is enacted and made retroactive to January 1, 1957;" (7) that "the great majority of taxpayers have paid taxes upon stock in business without protest for the year 1957, leaving only a small number of protesting taxpayers to whom the Sears Roebuck decision will be applicable unless remedial legislation is made retroactive;" (8) that "it is the belief of the General Assembly that fundamental concepts of fairness and equality require that the protesting taxpayers be accorded the same tax treatment as those taxpayers who have paid taxes

upon stock in business without protest, to the end that no undue advantage will accrue to the protesting taxpayers who had not paid their taxes at the time of the filing and publication of the Sears Roebuck decision on or about November 22, 1957; " and (9) that "it is the intent of the General Assembly of Maryland to effectuate the policy of the State Tax Commission and of other taxing authorities of this State as it existed prior to the decision in the Sears case, this policy being to allow for inflationary factors in the assessment of real estate but not to allow for such inflationary factors in the assessment of personal property".

The operative provisions of the Act undertake to carry into effect the purposes and intent of the General Assembly as expressed in the above preamble clauses numbered (4) to (9), inclusive. Accordingly, the Act, insofar as here pertinent, amends or adds to the pre-existing law by providing, in brief, "effective as of January 1, 1957": (a) for the separate classification for taxation of real and personal property, with a separate sub-classification under the latter of "stock in business" (inventory) ; (b) for the determination of the "full cash value" of real estate by deducting from its "current value * * * an allowance for inflation, if in fact inflation exists"; (c) for the determination of the full cash value of personal property, as its "current value without any allowance for inflation"; (d) for the determination of the "fair average value" of a "stock in business" by taking the "cost or market value [thereof], whichever is lower, without any allowance for inflation"; (e) for immunity from prosecution or penalty for any violation of the Act which occurred prior to its passage; and (f) for the separability of the provisions of the Act. The Act was passed as an emergency measure to take effect from the date of its passage, and it was approved on April 4, 1958. It was clearly intended to reverse the result of the *Sears* case for 1957 and subsequent years.

This case is a sequel to the *Sears* case, *supra,* 214 Md. 550, 136 A. 2d 567. There this Court held that, under the then existing law, the assessment practice of the State Tax Commission of making a deduction from the "full cash value" of real estate in order to allow for the effect of inflation, but of

refusing to make any such deduction from the "full cash value" of personal property (consisting of stock in trade) constituted a discrimination against the owner of such personal property, from which the owner was entitled to relief by having his assessment reduced. At the times of the assessments involved in the *Sears* case Code (1957), Art. 81, Sec. 14[1] provided (in part) that, "[e]xcept as hereinafter provided, all property directed in this article to be assessed, shall be assessed at the full cash value thereof on the date of finality." A special method of determining the fair cash value of the stock in trade of persons engaged in manufacturing or commercial business was prescribed by Sec. 15 (Sec. 14 in 1951). This was based upon the average value of inventory for the twelve months preceding the date of finality.

Before proceeding further it seems well to state that the *Sears* case did not determine that Article 15 of the Maryland Declaration of Rights required uniformity of treatment of real estate and personal property for tax purposes. No such question was involved in the case. It was there held that under the applicable statutory provisions the Legislature had put real estate and inventories on the same footing for tax purposes, and that a practice of the Commission which gave to the former more favorable treatment than to the latter as to assessments and therefore (because the tax rates per dollar of assessed value were the same) also gave to owners of real estate more favorable treatment as to the amount of taxes on property of equal value, was invalid. It was further held that under the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, the owner of personal property was entitled to have his assessment reduced to the same level as that applicable to real estate.

The challenges to the validity of the Act are based upon the following grounds: first, that it sets up an unfair and dis-

---

1. References to section numbers in this opinion are to those of the 1957 Edition of the Code, or amendments thereto; and, unless otherwise specified, references simply to section numbers are to sections of Art. 81 of the Code. Sec. 14 of the 1957 Edition was Sec. 13 (a) of the 1951 Edition.

criminatory basis for the assessment of real and personal property, which (a) is not authorized by the provisions for classification of property contained in Article 15 of the Maryland Declaration of Rights and which (b) is prohibited by the Fourteenth Amendment to the Constitution of the United States; second, that it is an invalid attempt to delegate legislative power to the Commission, since it sets up no standards whatever by which the Commission is to be guided in making an allowance for inflation in assessing real estate and thereby nullifies the sole basis ordered for differentiation between real and personal property; and third, that its retroactive provisions are unconstitutional as a violation of due process under Article 23 of the Maryland Declaration of Rights and under the Fourteenth Amendment to the Constitution of the United States.

The first attack is two-pronged, but its two branches are so closely related as to make it desirable to treat them together so as to avoid unnecessary repetition.

The power to classify property for purposes of taxation was conferred by the amendment to Article 15 of the Maryland Declaration of Rights which was proposed by Ch. 390 of the Acts of 1914 and ratified November 2, 1915. Prior to that amendment, taxes were required under Article 15 to be apportioned in accordance with the actual worth of the taxpayer in real or personal property. This necessarily meant uniformity of assessment as well as uniformity of tax rates. See an article by H. H. Walker Lewis, Esq., "Maryland Tax Articles," 13 Maryland L. Rev. 83, at 105; *State v. Cumberland & Penn. R.R. Co.,* 40 Md. 22; *Schley v. Montgomery County,* 106 Md. 407, 67 A. 250. The history of Article 15 is traced by Lewis and is also traced in a very full opinion of the then Attorney General, now Judge Hammond, and of Robert M. Thomas, Esq., then an Assistant Attorney General, reported in 37 Ops. Att'y Gen. 424 (1952). See especially pages 426-433 and the cases therein cited. We shall not undertake to review this history at length in this opinion.

In the Constitution of 1867, as originally adopted, Article 15 contained a provision that "every person in the State, or person holding property therein, ought to contribute his

proportion of public taxes, for the support of the government, according to his actual worth in real or personal property". This was omitted by the 1915 amendment, which substituted the provision "that the General Assembly shall, by uniform rules, provide for separate assessment of land and classification and subclassifications of improvements on land and personal property, as it may deem proper; and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform as to land within the taxing district, and uniform within the class or subclass of improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy". The Article still concludes with the provision "yet fines, duties or taxes may justly be imposed, or laid with a political view for the good government and benefit of the community." This last clause is not involved in the present case.

*Susquehanna Power Co. v. State Tax Comm.*, 159 Md. 334, 151 A. 29, makes it clear that the obligation of owners of property within the State to pay taxes thereon continues to exist, notwithstanding the amendment, and is implicit in the provisions with regard to uniformity within classes or subclasses. We find, however, no implication in that case of a continued constitutional obligation under Article 15 that taxes must be uniform as between different classes of property. Cf. *Wells v. Hyattsville,* 77 Md. 125, 26 A. 357, decided in 1893, in which it was held that a local Act imposing a tax on real estate, but barring a tax on personal property, for town purposes was unconstitutional under Article 15 as it then stood.

In *Oursler v. Tawes,* 178 Md. 471, 13 A. 2d 763, this Court held that Article 15 did not bar income taxes at different rates on ordinary income and on investment income. This case is of especial significance here because, although the Court considered it doubtful whether an income tax was a property tax, it was held that it was controlled by the same basic principles which govern either excise or property taxation. (178 Md. 482.) In rejecting the taxpayers' argument based upon

alleged unwarranted discrimination this Court said (178 Md. 484-485) : "In some cases, it is submitted that sources of income accruing from property of one classification are subjected to a greater tax burden than are sources of income derived from property pertaining to another and separate classification. And it is argued that for that reason the effect of the act is to impose an arbitrary and discriminatory tax upon some taxpayers as compared with the tax burden which it places upon others. This situation, however, arises not as between taxpayers whose sources of income or situations are similar in that they accrue from property of like classification under the act; but arises in cases where the sources of income accrue from property of separate and distinct classifications under the act." This seems to be a clear indication that taxes can be different as between different classes of property.

See also *County Comm'rs of Anne Arundel County v. English,* 182 Md. 514, 35 A. 2d 135, which recognized that there can be a reasonable classification for tax purposes, but struck down the assessment there involved as being discriminatory.

1 Cooley, *Taxation,* (4th Ed.), § 281, p. 596, states: "* * * [I]n those states where all property need not be taxed, a classification of property as real and personal, and the taxing of one and not the other, has been upheld." Maryland has long granted or permitted exemptions in favor of religious or charitable organizations and other exemptions believed to be in the public interest, such as those from local or State taxation, or both, of raw materials and inventory in the hands of manufacturers and manufacturing machinery and equipment. Indeed, it was the repeal of such exemptions in Baltimore City which precipitated the present controversy. Cf. *Kimball-Tyler Co. v. City of Baltimore,* 214 Md. 86, 133 A. 2d 433. National was a party to a suit covered by that case.

In footnote 25 to § 292, *op. cit.,* Cooley says: "If there is a general power to classify, no good reason is apparent why different rates may not be imposed on real and personal property as constituting separate classes." See *Klein v. Bd. of Supervisors,* 282 U. S. 19, 24; *Waring v. City of Savannah,*

60 Ga. 93, 98; *Wadhams & Co. v. State Tax Comm.,* 273 P. 2d 440 (Ore.); *Hilger v. Moore,* 182 P. 477 (Mont.).

A like rule has been applied to variations in assessments of different classes of property. *Rees v. City of Erie,* 90 A. 58 (Pa.), involving different percentages applied to land and to improvements. *Kentucky Finance Co. v. McCord,* 290 S. W. 2d 481 (Ky.), 100% of full cash value on intangible personal property, 29.7% on real estate.

In Maryland, a totally different basis of taxation of intangible personal property long prevailed—the so-called 30-mill tax on stocks, bonds and other securities. Its repeal and replacement by the income tax on investment income shows the interrelation which may exist between property taxes and income taxes.[2]

The Attorney General's opinion above referred to (37 Ops. Att'y Gen. 424) dealt directly with a statute which provided for the assessment of inventories in two counties for local purposes at 75% of the fair average value thereof during the year preceding the date of finality. In discussing the question, the opinion (p. 434) referred to 1 Cooley, *op. cit.,* § 298 and quoted a footnote stating that "Ordinarily, it would seem, a classification whereby one class of property would be valued at a higher or lower percentage of real value than other property, conceding the power to classify in a proper case, would ordinarily be an unreasonable classification and therefore invalid." The Attorney General commented: "This is almost the equivalent of saying the power does not exist." We agree with this comment. At page 436 of the above opinion, the Attorney General made the following further comment, with which we also agree:

"Moreover, inasmuch as the final tax is the product of the rate and an assessment of valuation, there

2. Former Judge Oscar Leser, for many years a member of the Appeal Tax Court of Baltimore and later of the State Tax Commission, has stated that prior to the 1915 amendment of Article 15 the 30-mill tax was unconstitutional, though it was never challenged. See Lewis, *op. cit.,* 13 Md. L. Rev. 100, citing Proceedings of National Tax Assn., 1922, p. 307. Exemptions in favor of manufacturers long antedate the 1915 amendment.

would seem to be little logic from the standpoint of practical results in denying the Legislature the power to classify for purposes of valuation and assessment when it already has the power to classify as to rates. The trend, such as it is, seems to be toward increased powers of classification for all purposes, particularly where the Constitution requires uniformity only within the class or sub-class of property."

We, therefore, find it unnecessary to rest our decision with regard to the power of the General Assembly to classify upon the narrow ground of the statement in *Rogan v. County Commissioners of Calvert County,* 194 Md. 299, 309, 71 A. 2d 47, 51 (which cited a similar statement in *Leser v. Lowenstein,* 129 Md. 244, 250, 98 A. 712), to the effect that the requirement of Article 15 that taxes shall be uniform as to land within the taxing district, "refers to levies of taxes and not to assessments." The test which we deem appropriate is the reasonableness of the classification rather than the method by which a difference in the amount of taxes is effected—whether by a difference in percentage of assessment or by a difference in the rate of taxation applicable to the respective classes. Cf. Lewis, *op. cit.,* 13 Md. L. Rev. 103-107, where he questions the statement as made in the *Rogan* case on the ground that it has been lifted out of the context in which it was made in the *Leser* case and was thereby given a destructive effect as to the uniformity which should be required.

Our present Article 15 requires that a classification be uniform within a class, and this Court struck down as arbitrary a classification under our Income Tax Law in *Blaustein v. Tax Comm.,* 176 Md. 423, 4 A. 2d 861, where there was no real difference between income from certain trust estates which was taxed and income from others which was not.

Turning now to the Equal Protection Clause of the Fourteenth Amendment, it is well settled that this Clause does not prevent a State from making a reasonable classification for tax purposes and taxing different classes differently. *Michigan Central R.R. Co. v. Powers,* 201 U. S. 245; *Kentucky Union Co. v. Kentucky,* 219 U. S. 140; *Northwestern Mutual Life Ins. Co. v. Wisconsin,* 247 U. S. 132; *Nashville, C. & St.*

*L. Ry. v. Browning,* 310 U. S. 362; 1 Cooley, *Taxation,* (4th Ed.), § 332, p. 705.

In the very recent case of *Allied Stores of Ohio, Inc. v. Bowers,* 358 U. S. 522 (1959), the Supreme Court has reviewed many cases dealing with classification for purposes of state taxation of several kinds and has restated some of the rules with regard to the application thereto of the Equal Protection Clause of the Fourteenth Amendment. The Court points out that this clause "imposes no iron rule of equality, prohibiting the flexibility and variety that are appropriate to reasonable schemes of state taxation." (358 U. S. at page 526.) The Court further says (p. 527): "But there is a point beyond which the State cannot go without violating the Equal Protection Clause. The State must proceed upon a rational basis and may not resort to a classification that is palpably arbitrary. The rule often has been stated to be that the classification 'must rest upon some ground of difference having a fair and substantial relation to the object of the legislation.' [Cases cited.] 'If the selection or classification is neither capricious nor arbitrary, and rests upon some reasonable consideration of difference or policy, there is no denial of the equal protection of the law.' *Brown-Forman Co. v. Kentucky,* 217 U. S. 563, 573; *State Board of Tax Comm'rs v. Jackson,* 283 U. S. 527, 537. That a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy. *American Sugar Ref. Co. v. Louisiana,* 179 U. S. 89; *Stebbins v. Riley,* 268 U. S. 137, 142."

The *Brown-Forman* case upheld a tax on distillers and rectifiers of blended spirits, though the state imposed no corresponding tax on distillers or rectifiers of straight spirits. In the *Jackson* case a progressive tax on chain stores based upon the number of units was upheld. In the *American Sugar Refining* case a tax on persons or corporations engaged in the business of refining sugar and molasses was upheld, notwithstanding an exemption in favor of planters and farmers grinding and refining their own sugar and molasses. In *Stebbins v. Riley, supra,* a state inheritance tax was upheld which prohibited the deduction of the amount of the Federal Estate Tax in arriving

at the amount of the state tax, even though such disallowance resulted in equalities in some instances.

Equality within a class is essential under the Equal Protection Clause, but equality between different classes is not required. *Kentucky Railroad Tax Cases,* 115 U. S. 321, *Magoun v. Illinois Trust & Savings Bank,* 170 U. S. 283; *Michigan Central R.R. Co. v. Powers, supra; Hart Refineries v. Harmon,* 278 U. S. 499.

The Supreme Court has also said that the Equal Protection Clause does not require that a state tax all pursuits or all property that may legitimately be taxed. *Connolly v. Union Sewer Pipe Co.,* 184 U. S. 540, 562. That Court has held that if a state taxes wholesale dealers in certain specified articles, it need not impose a like occupation tax upon wholesale dealers in other articles. *Southwestern Oil Co. v. Texas,* 217 U. S. 114.

Our next problem is whether or not, under established rules, the particular classification here made is valid under Article 15 of the Maryland Declaration of Rights and under the Equal Protection Clause of the Fourteenth Amendment.

The Supreme Court has repeatedly stated that under the Equal Protection Clause real property and personal property may be differently taxed. *Bell's Gap R. Co. v. Pennsylvania,* 134 U. S. 232, 237; *Home Ins. Co. v. New York,* 134 U. S. 594, 606; *American Sugar Refining Co. v. Louisiana, supra; Southwestern Oil Co. v. Texas, supra; Stebbins v. Riley, supra; Ohio Oil Co. v. Conway,* 281 U. S. 146, 149. In none of these cases was this the actual holding of the case, but the general principle appears from these numerous statements to be fully accepted as well settled law. See also, 1 Cooley, *Taxation,* § 281, above cited, as to taxation of one class of property and not the other; 51 Am. Jur., *Taxation,* § 194; 84 C.J.S., *Taxation,* § 26; *Kentucky Finance Co. v. McCord, supra.*

These authorities are, we think, sufficient to sustain different treatment of real and personal property for purposes of assessment for taxation. We shall not, however, rest our decision on this phase of the case solely on that general ground.

We have already set forth the declarations of the Legislature in the preambles to the Act. Those numbered above as (4),

(5) and (9) seem of particular pertinence in this aspect of the case, and the operative provisions of the Act are in accord with the intent and belief therein set forth. It is not incumbent upon the Legislature to state its reasons, motives or policies for adopting a tax classification *(Southwestern Oil Co. v. Texas, supra; Allied Stores of Ohio v. Bowers, supra)*, insofar as the Equal Protection Clause is concerned; but if it does so, State action may be tested solely on the basis of the purpose declared. *Wheeling Steel Corp. v. Glander,* 337 U. S. 562, commented upon and distinguished in the *Allied Stores* case.

The preamble of the Act (Par. (5)) speaks of the inherent differences between real and personal property and the peculiarities of certain classes of personal property (first) as requiring and justifying separate classification and sub-classification for assessment purposes and (second) as requiring and justifying the making of an allowance for inflation with respect to real estate, but not personal property. Other recitals show, we think, that inflation at least prompted the adoption of the statute. Yet, after we give careful consideration to that fact, and if we accept the appellant's contention that there must be some difference in the impact of inflation as between real estate and tangible personal property to support the difference in treatment here accorded, we cannot say that the legislative classification based upon the finding stated in preamble clause (5), *supra,* is unsustainable. There is a strong presumption in favor of the validity of a legislative finding. As was said by Chief Judge Markell, speaking for this Court in *Dundalk Liquor Co. v. Tawes,* 201 Md. 58, 62, 92 A. 2d 560: "An invalid act cannot be made valid by a 'preface of generalities' in the form of a legislative declaration of purpose. *Schechter Poultry Corporation v. United States,* 295 U. S. 495, 537, 55 S. Ct. 837, 79 L. Ed. 1570. But if a legislative declaration is not demonstrably untrue or meaningless, and if true, would support the validity of the act, the courts must accept the judgment of the legislature and cannot substitute a contrary judgment of their own." See also *Mt. Vernon-Woodberry Cotton Duck Co. v. Frankfort Marine, etc., Insurance Co.,* 111 Md. 561, 75 A. 105.

It is true that in the *Sears* case, this Court recognized what was not, indeed, contested, that inflation had affected sales prices of real estate as well as of inventories. That, however, is not an end of the matter for the impact may be, and, in effect, has been declared by the Legislature to be, different as between real property and personal property. Only a relatively small portion of the total amount of real property is, we believe, in the nature of the stock in trade of developers or real estate dealers, and only a relatively small portion is used for the purpose of manufacturing goods for sale, which goods are themselves directly affected by inflationary prices. Most real estate is not held for sale or for manufacturing purposes. Perhaps it would be desirable to classify properties so held separately from, say, residential real estate not held for sale. But to say that there is no difference, so far as the impact of inflation is concerned, between real estate in general, on the one hand, and tangible personal property consisting of inventory and tools and machinery used for manufacturing, on the other hand, would be to make the tail wag the dog. So to hold would, we think, amount to a substitution of the judgment of this Court for that of the Legislature, without any adequate evidence to show that the classification made by the Legislature was without any reasonable foundation. The burden rests upon one attacking the constitutionality of an Act to show such lack. *Salsburg v. State,* 201 Md. 212, 94 A. 2d 280, affd. 346 U. S. 545; *Allied American Mutual Fire Ins. Co. v. Commissioner of Motor Vehicles,* 219 Md. 607, 150 A. 2d 421; *Dundalk Liquor Co. v. Tawes, supra; Mt. Vernon-Woodberry Cotton Duck Co. v. Frankfort Marine, etc., Insurance Co., supra; Robey v. Broersma,* 181 Md. 325, 329, 26 A. 2d 820; *Tatlebaum v. Pantex Mfg. Co.,* 204 Md. 360, 370, 104 A. 2d 813.

As to the relative impact of inflation upon real property and tangible personal property, we may note that under our present tax laws and exemptions from taxation (as to the latter of which see Secs. 9 (12) and 9 (17) of Art. 81), generally speaking, taxable personal property is held or used for manufacturing, mercantile or other business purposes. As we have noted above, real estate, to a very considerable extent, is not.

Inventories are held for sale or resale in the hope and expectation of a quick turnover. By reason of the limitation of the assessable value of inventories under Sec. 15 (a) to cost or market, whichever is lower, the owner is ordinarily protected taxwise against any inflationary rise in prices after he has become the owner of the property. No corresponding protection is built into the statute for other types of tangible personal property, but even such other types of property are usually held for a considerably shorter time than real estate, because they wear out or become obsolete more rapidly. They are generally subject to fairly rapid rates of depreciation under income tax laws as compared with improvements to real estate, and land is not subject to depreciation at all in an accounting sense. Of course, depreciation allowances give a tax benefit under income tax laws. In the overall picture of taxation the owner of tangible personal property held for business purposes thus receives a greater deduction in any given year from gross income in arriving at his net income subject to taxation than does the owner of real property of equal original value.

Even though the owner of tangible personal property held for business purposes may fare worse taxwise than the owner of real estate, this alone does not nullify a classification based upon the two different types of property. Insofar as our Article 15 of the Declaration of Rights is concerned, as we have already pointed out, there would seem to be little point in providing for different classifications of property if different tax treatment could not be accorded to the actually different classes. Insofar as the question of discrimination and the Fourteenth Amendment is concerned, *Allied Stores of Ohio v. Bowers, supra,* seems decisive. There the Court said (358 U. S. at 528), as we have already noted, that the fact that "a statute may discriminate in favor of a certain class does not render it arbitrary if the discrimination is founded upon a reasonable distinction, or difference in state policy", and further that "a classification, though discriminatory, is not arbitrary nor violative of the Equal Protection Clause of the Fourteenth Amendment if any state of facts reasonably can be conceived that would sustain it." The similarity of the problem of reasonable classification under a state constitution

like our Article 15 and under the Equal Protection Clause of the Fourteenth Amendment is apparent and was noted in *State Board of Tax Comm'rs v. Jackson, supra,* 283 U. S. at 542.

In the present case we think, as we have indicated above, that a state of facts can reasonably be conceived which would support the classification, and we, therefore, find no violation of either Article 15 of the Maryland Declaration of Rights or of the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States.

We turn now to National's contention that the absence of standards to guide the Commission in making an allowance for inflation is fatal to the validity of the Act. The language of the Act requiring that an allowance for inflation be made in the case of real estate is certainly very general in terms. However, the Act refers in its preambles to the *Sears* case and to the prior assessing practices of the Commission and of other taxing authorities with regard to making an allowance for inflation in the case of real estate and not making it in the case of personal property. That such a practice existed was recognized in the *Sears* case[3] and that it was sufficiently definite to be capable of ascertainment, at least for the year 1957, was implicit in the remand of the case for further proceedings which were to be for the purpose of reducing Sears' inventory assessment to the same level as that of real estate. Such reduction was the point to which *Hillsborough Township v. Cromwell,* 326 U. S. 620, was cited in the *Sears* case. The evidence in this case indicates that the usual deduction which had been allowed for inflation in the case of real estate was approximately 40%. It is to be presumed that the General Assembly was familiar with this practice when it stated its intention to effectuate the policy of the Commission and of other taxing authorities and adopted an enactment to carry that intention into effect.

---

3. Some practice involving assessment of real estate at less than full current value has been used by the Commission in the past. See *Rogan v. Co. Comm'rs, supra.* And a hybrid system of valuing improvements to real estate, based upon age, was upheld in *State Tax Comm. v. Brandt Cabinet Works,* 202 Md. 533, 97 A. 2d 290.

We find it unnecessary, however, to pass upon any question based upon the vagueness of the statute as regards real estate. If we assume, without deciding, that the absence or vagueness of the standards set up renders the provision for such an allowance invalid, we think that the separability clause would come into operation. This would leave the provision for taxation of personal property at full cash value in full force and effect. The appellant contends that since the provision for allowing a deduction in real estate assessments on account of inflation must fall, then, giving effect to the separability clause, real estate is (still) assessable at full cash value, and we are back at the same place as in the *Sears* case.

We do not think that this result follows. On the contrary, we think that a reading of the whole Act, including the preambles, indicates that the General Assembly intended to exercise its power of classification as one objective in itself, and that this is true, notwithstanding that inflationary influences affecting real estate and the decision in the *Sears* case doubtless prompted its action. It seems clear that the Legislature intended to tax personal property at full value, just as it intended to tax real property at less. There seems little reason why the possible failure of the latter objective because of inadequate guides as to how to effect it, should defeat the former. There is no room to infer that the Legislature intended to treat both alike. Here the Legislature could hardly have made it plainer that it intended to classify real estate and personal property separately for tax purposes and to treat them differently. An intention to treat them alike was the foundation of the *Sears* decision; under the present Act that intention no longer exists.

In the light of what we have just said, if we assume that the provision for an allowance on account of inflation for real estate is invalid for vagueness or lack of standards, we cannot say that the General Assembly would not have adopted the Act at all, and specifically the provisions for classification, if it had known that this provision would be stricken down; nor can we say that it is so interwoven with the entire Act that the provisions for different classification cannot stand without it. Therefore, we think that the provisions as to personal

property should stand and the separability clause and the presumption which it creates should be given effect. *Fidelity & Guaranty Fire Corp. v. State Tax Comm.*, 172 Md. 652, 193 A. 164; *Oursler v. Tawes, supra; Md. Unemployment Comp. Bd. v. Albrecht*, 183 Md. 87, 36 A. 2d 666. See also *Bd. of Co. Comm'rs of Prince George's Co. v. Donohoe* (No. 257, Sept. Term, 1958), 220 Md. 362, 152 A. 2d 555. Cf. *Heubeck v. City of Baltimore*, 205 Md. 203, 107 A. 2d 99; *City of Baltimore v. A. S. Abell Co.*, 218 Md. 273, 289-290, 145 A. 2d 111.

Accordingly, we should no longer have a difference *within the same class* as between National, a personal property taxpayer, and real estate taxpayers; but any inequality which there may be is between different classes. As we have held above, real property and personal property may be differently classified and taxed, without any requirement for equality between them. Accordingly, we think, National is in no position to complain.

There is no obligation resting on the State under the Fourteenth Amendment to tax other classes. See *Connolly v. Union Sewer Pipe Co.; Southwestern Oil Co. v. Texas*, both cited above, and the cases upholding different taxation of different classes of property. See also *Charleston Federal Savings & Loan Assoc. v. Alderson*, 324 U. S. 182, 191, in which it is said that the Equal Protection Clause does not prohibit inequality in taxation "which is not shown to be the result of intentional or systematic undervaluation of some but not all of the taxed property *in a single class*." (Italics supplied.)

Any invalidity of the inflation allowance provisions affecting real estate of which a real property taxpayer might complain because of alleged inequality of assessments does not give a taxpayer not affected by the provisions complained of standing to maintain a suit to upset them. *Roberts & Schaefer Co. v. Emmerson*, 271 U. S. 50, 54; *Seaboard Commercial Corp. v. State Tax Comm.*, 181 Md. 234, 239, 29 A. 2d 294; *Atkinson v. Sapperstein*, 191 Md. 301, 309, 60 A. 2d 737; *Hess v. Mullaney*, 213 F. 2d 635; *People v. Southwestern Bell Tel. Co.*, 36 N. E. 2d 362 (Ill. Sup. Ct.). In the last mentioned case, it was held that there was no violation of uniformity of taxation where the assessment of one kind of property (real

estate) was reduced and that of another (personal property) was not.

The appellant's last contention is that the Act is invalid as applied to 1957 assessments because, as to them, it is retroactive.

The subject of retroactive taxes was considered at some length in *Comptroller v. Martin,* 216 Md. 235, 140 A. 2d 288, in which retroactive sales and use taxes having a backward reach of three to six years as to the transactions there involved was held invalid. That case, however, recognized the often stated rule that a tax is not necessarily invalid because it is retroactive, citing *Diamond Match Co. v. State Tax Comm.,* 175 Md. 234, 200 A. 365; *Leser v. Wagner,* 120 Md. 671, 87 A. 1040, affd. *sub nom. Wagner v. Baltimore,* 239 U. S. 207; and *Welch v. Henry,* 305 U. S. 134.

The first general group of cases discussed in the *Martin* case in which retroactive taxes have been upheld are the so-called ratification cases. Probably the leading case among them is *United States v. Heinszen & Co.,* 206 U. S. 370. In speaking of this case, we there said: "It upheld an Act of Congress which validated customs duties previously imposed under Presidential, rather than Congressional, authority. Other Supreme Court decisions had established the lack of power to impose such duties without the authorization of Congress. The case was rested squarely upon ratification of the acts of an agent done without prior authority from the principal. The *Heinszen* case was followed in *Tiaco v. Forbes,* 228 U. S. 549, and in *Rafferty v. Smith, Bell & Co.,* 257 U. S. 226. In *Tiaco v. Forbes,* 228 U. S. at 556, Mr. Justice Holmes thus stated the ratification doctrine: '[I]t generally is recognized that * * * where the act originally purports to be done in the name and by the authority of the state, a defect in that authority may be cured by the subsequent adoption of the act. The person who has assumed to represent the will and person of the superior power is given the benefit of the representation if it turns out that his assumption was correct. [Cases cited.]' "

At this point it seems appropriate to state that the Act is not, in our estimation, an attempt at a legislative reversal of a judicial decision. It is, rather, an attempt to supply legis-

lative authority previously lacking. See *Washington Suburban Sanitary Commission v. Noel,* 155 Md. 427, 142 A. 634, where the Legislature ratified an assessment for a public improvement which had previously been held invalid because of a lack of the notice required by the act originally authorizing the assessment.

The *Noel* case is clearly a case of ratification. So, we think, is the present case. In the *Martin* case, the preambles of the statute (which, as noted, did not constitute parts of its operative provisions) undertook to declare what the intent of the General Assembly had "always" been as to certain definitions and that the uniform administrative interpretation and enforcement had always been in conformity "with the provisions of this Act." It was pointed out that these recitals did not amount to a legislative attempt to reverse prior decisions of this Court contrary to these declarations, that if it were such an attempt it would be ineffectual (citing Article 8 of the Declaration of Rights; *Crane v. Meginnis,* 1 Gill & J. 463, 476; and other cases), and that the pertinent operative parts of the statute there involved did not undertake to ratify anything, but to add retroactively a new definition to the Retail Sales Tax Act and (similarly) to amend a provision of the Use Tax Act. These changes, which had the effect of bringing transactions not previously taxed within the ambit of taxation, were held to constitute new enactments, not ratification. (216 Md. 245, 249.)

In the instant case the intention to ratify is clear, even though the word "ratify" is not used, and the words of the operative portion of the statute are apt to accomplish that purpose. It is true, as held in the *Martin* case and in *Gibson v. State,* 204 Md. 423, 104 A. 2d 800, that a preamble is not an operative part of a statute. It may, however, sometimes be resorted to in aid of the interpretation of a statute. *Hammond v. Lancaster,* 194 Md. 462, 71 A. 2d 474; *Hammond v. Frankfeld,* 194 Md. 487, 71 A. 2d 482. An existing practice as to the assessment of property long taxed was recognized and was adopted retroactively by the enactment in the case before us.

In one respect the case is stronger for ratification than was the *Heinszen* case. This is that there was here a statute in

force which authorized the taxation of the property in question, but in *Heinszen* there was not. The difficulty in *Sears* stemmed from an administrative practice which was contrary to the requirements of the statute; but, even so, *some* assessment was proper. This, we think, is clear from the decision in *Sears* to remand for the reduction of the assessment; otherwise the tax would have been held wholly invalid.

The ratification here involved is, we think, indistinguishable in principle from that upheld in the *Noel* case. It also seems to be supported by *Leonardo v. Board of County Comm'rs of St. Mary's County,* 214 Md. 287, 134 A. 2d. 284, where the General Assembly ratified an invalid statute providing for the establishment of a special taxing district for erosion prevention work, though there had been no levy of taxes prior to the validating act.

National contends that no retroactive *ad valorem* tax has ever been upheld. The Commission controverts this and cites a number of cases in support of its position. Among the cases so cited we find *Chicago, R. I. & P. Ry. Co. v. Streepy,* 211 Iowa 1334, 236 N. W. 24, and *Whitlock v. Hawkins,* 105 Va. 242, 53 S. E. 401, quite in point. In each the state legislature passed a retroactive, curative act for the imposition of ordinary real estate taxes, which, we take it, were *ad valorem* taxes. In the Iowa case the original statute was held unconstitutional because of a defect in the title; in the Virginia case the original statute was held unconstitutional because it had not received the requisite majority of votes needed for an act of its type in the legislature.

We see nothing peculiar to an *ad valorem* tax which would call for the application of a different rule from that applicable to some other types of retroactive taxes, such as benefit assessments.

As was said in the *Streepy* case: "As to the contention that the Legislature had no power to pass a retroactive legalizing act, the law is that, if the Legislature possessed the power in the first place to authorize the levy and collection of the taxes in question, then it had the power, by retrospective act, to cure any defect which may have obtained in the assessment and collection of such a tax."

In the *Whitlock* case the Supreme Court of Appeals of Virginia said: "It is not claimed that there is any inhibition in the Constitution of the State of Virginia upon the passage of retrospective laws by the Legislature. The authorities we have cited abundantly show that such laws are not repugnant to the Constitution of the United States, unless they partake of the nature of *ex post facto* laws, or impair the obligation of a contract; or, since the adoption of the Fourteenth Amendment, deprive a citizen of property without due process of law.

"From these propositions a fourth qualification is deduced, which is really a corollary from them, and that is, that the curative act can only be effectual to do that which the Legislature would have been competent to provide for and require to be done by a law prospective in its operation."

We think that the Act in this case meets the tests stated in the *Whitlock* case.

A tax on imports is in at least one sense an *ad valorem* tax, though it is not a general property tax. Hence, the *Heinszen* case also seems to be against the appellant's contention that a retroactive *ad valorem* tax cannot be valid.

Other cases cited by the appellee which tend to support its contention on this point are: *Kentucky Union Co. v. Kentucky, supra; Rafferty v. Smith, Bell & Co., supra* (tax on value of exports); *Woolley v. Hendrickson,* 73 N. J. L. 14, 62 A. 278 (validation of taxes for school purposes); *People v. New York Central R.R. Co.,* 282 Ill. 11, 118 N. E. 462 (curative act in 1917 to validate 1916 levy for schools); *Ricardo v. Ambrose,* 211 F. 2d 212 (C.A., 3rd).

In the *Kentucky Union* case retroactive real estate taxes for the years 1901 to 1905, inclusive, were imposed by a Kentucky statute passed in 1906. It was held, citing *League v. Texas,* 184 U. S. 156, that "Laws of a retroactive nature, imposing taxes or providing remedies for their assessment and collection and not impairing vested rights, are not forbidden by the Federal Constitution." (219 U. S. 152-153.)

The fact that the appellant had instituted suit to have its assessment declared invalid prior to the time of adoption of the curative statute does not give it any vested right. *United*

*States v. Heinszen & Co., supra; Mattingly v. District of
Columbia,* 97 U. S. 687; *Chicago, R. I. & P. Ry. Co. v.
Streepy, supra,* 211 Iowa at 1342.

In view of our holding that this case is one of ratification,
the "recent transactions" rule referred to in the *Martin* case
does not seem of importance, if it is, indeed, applicable at
all; nor do we find any violation of it. Perhaps the most
stringent statement of that rule is to be found in *Common-
wealth v. Budd Co.,* 379 Pa. 159, 108 A. 2d 563, where it
was said (108 A. 2d 569) that: "Following *Welch v. Henry,*
we decide that a tax may not be retroactively applied beyond
the year of the general legislative session *immediately pre-
ceding that of its enactment;* to provide otherwise constitutes
a denial of due process." *Wheeler v. Commissioner of In-
ternal Revenue,* 143 F. 2d 162 (C. C. A., 9th), reversed on
other grounds, 324 U. S. 542, adopts the same view of *Welch
v. Henry* as did the *Budd* case. *Welch v. Henry, supra,* 305
U. S. 134, does not, however, impose such a limitation; it
merely upheld a tax not exceeding it. Here the date of fi-
nality was January 1, 1957, (*Kimball-Tyler Co. v. City of
Baltimore, supra*), which would fall even within the rule of
the *Budd* case, though we do not hold here, any more than
we did in the *Martin* case, that that case expresses the utter-
most limit of retroactivity of a tax statute under the recent
transactions rule.

In accordance with the above views, the order of the trial
court will be affirmed.

*Order affirmed, with costs.*

HENDERSON, J., filed the following dissenting opinion.

The majority opinion properly observes that this case is a
sequel to the case of *Sears, Roebuck v. State Tax Comm.,*
214 Md. 550. It was there held that an assessment practice
of the Tax Commission, which gave more favorable treatment
to the owners of real property than to the owners of personal
property, was invalid, and that an owner of personal prop-
erty had standing, under the equal protection clause of the
Fourteenth Amendment, to raise the question of discrimina-
tion, citing *Hillsborough Township v. Cromwell,* 326 U. S.

620. Moreover, this Court held the taxpayer was entitled to have its assessment reduced to the lower level accorded to others, although in earlier cases it had been indicated that its only remedy would be to require the taxing authorities to raise the level of the assessments of others. To this extent, it would seem that this Court felt constrained in the *Sears* case to modify or reverse the rule laid down in *Baltimore Steam Packet Co. v. Baltimore,* 161 Md. 9, 21. See also *Board of County Comm'rs of A. A. Co. v. Buch,* 190 Md. 394, 399. For a discussion of the effect of the *Hillsborough* case, see Hellerstein, *Judicial Review of Property Tax Assessments,* 14 *Tax L. Rev.,* 327, 344 *et seq.,* citing particularly the case of *Baldwin Construction Co. v. Essex County Bd. of Tax.,* 108 A. 2d 598 (N. J., 1954), which drastically altered the assessment procedures in New Jersey.

The State Tax Commission was then faced with the alternatives of either raising all assessments to the level of full cash value prescribed by the statute, or reducing the assessments of personal property. It did neither. Instead, it sought legislative approval of its prior practice in the guise of classification. The question presented is whether the statute validly accomplishes its avowed purpose, declared in a recital to be "to effectuate the policy of the State Tax Commission and of other taxing authorities of this State as it existed prior to the decision in the *Sears* case, this policy being to allow for inflationary factors in the assessment of real property but not to allow for such inflationary factors in the assessment of personal property." A recital is not law, although it may be looked to as bearing upon legislative intent. The key language of the enactment is found in subsection 14 (b) (1) which defines "full cash value", as applied to real estate, as "current value less an allowance for inflation, if in fact inflation exists". Subsection 14 (b) (2) defines "full cash value", as applied to personal property, as "current value without any allowance for inflation".

I would agree that the present Article 15 of our Declaration of Rights does not require that there be uniformity in the tax rates applicable to the various classes of property

therein mentioned. For present purposes I may assume that the legislature itself may validly accord to some kinds of property exemptions or deductions not accorded to property in another class or subclass. Statutes in some states which themselves fix the percentage of assessment values have been sustained, when uniform as to class, and where state constitutions permit. But the majority opinion does not attempt to meet the objection, raised on this appeal, that the vague and general reference to "inflation" is an invalid delegation of legislative power to an administrative agency, and that, if delegable at all, the power is controlled by no ascertainable or intelligible guides or standards. Instead, the majority opinion assumes the invalidity of the Act, as regards real estate, and holds that even if subsection 14 (b) (1) were deleted from the Act, the appellant cannot complain of being taxed at "current value without any allowance for inflation", when the statute, as modified, requires that real estate be taxed in the same manner. I think the conclusion is unsound for several reasons.

The argument that the legislature would have passed the Act with the subsection as to real estate omitted, and hence that the Act is saved by the separability clause, seems untenable. The declared purpose was to continue the disparity. If both real and personal property were to continue to be assessed according to the same standard of full cash value, there would have been no occasion to amend the pre-existing law. The vice found in the *Sears* case was that the State Tax Commission had deliberately undervalued, or permitted the undervaluation, of real estate. If statutory authority for the practice is stricken down, we are just where we were before, unless the *Sears* case is to be overruled. If *Sears* is overruled we are faced with the question of the Fourteenth Amendment.

The majority opinion seems to hold, however, that the difference in treatment can be supported on the ground that real estate and personal property are now placed in different classes. But such "classification", to my mind, is wholly illusory if, as the Court assumes, real and personal prop-

erty are to be taxed at the same rate and upon the same assessable basis. If real and personal property are required to be treated alike for tax purposes, a mere legislative declaration that they are different in other respects is meaningless. The complaint that they are not treated alike in practice goes to the heart of the matter and raises again the question decided in the *Sears* case.

I revert to the question as to the validity of subsection 14 (b) (1), left unanswered in the majority opinion for reasons which I think are unsound. The term "inflation" is not defined in the Act, and accordingly the word must be taken in its common or popular meaning. Although economists may differ as to its causes, such as the pressure for wage increases, governmental policies, and the expansion of money supply and credit, the term in its popular sense connotes the decline in the purchasing power of the dollar, coincident to the general rise in prices, which has been continuous, though not constant in rate, at least since 1939, the year of the outbreak of the second World War. It is sometimes measured by the so-called "cost of living" index. Of course, the amount of inflation, or the price level, at any given time depends upon the initial or base time or year with which it is compared. A directive to the taxing authorities to make "an allowance for inflation, if in fact inflation exists", sets up no guide or standard. The amount to be allowed would depend in each case upon the point of reference, which is not designated. Inflation exists both as regards real and personal property. Its amount depends on the arbitrary selection of a previous price level. As I see it, the legislative directive is an open invitation to the taxing authorities to reduce assessments on real estate to whatever percentage of full cash value they please. This was precisely the vice we found in the *Sears* case. The directive supplies no point of reference, and hence leaves the matter to the uncontrolled discretion of the taxing authorities, without any objective standard at all.

The appellee argues that the standard in regard to inflation is no more vague than that of full cash value itself. I cannot agree. The latter term, over the years, has acquired a rather

definite meaning. An accepted test is current market value, based on a compilation of comparative sales, to determine a value based on the present conditions as reflected in the market place. No doubt, much must be left to the honest judgment of the assessors. Valuation is not an exact science. Actual sales prices should be evaluated to determine whether they are normal or forced according to the test laid down by the courts of a willing buyer and a willing seller. The particular property should also be considered in the light of its age, size, desirability, potential uses, and other factors. Appraisals may take into account original cost and reproduction cost; in some instances, a capitalization of income. Still, the tests are objective. This is a far cry from the deliberate undervaluation of property at some undisclosed and arbitrary percentage of full cash value.

The record in the instant case does not disclose what yardstick was applied by the State Tax Commission to the assessment of real property. It is conceded that it applied the test of full cash value to personal property. The Secretary to the Commission testified that "roughly speaking, real estate was assessed at 60% of the assessed value". There was no effort to justify the end result in terms of "inflation", or to explain the basis for its selection of that average figure. I cannot see how a deliberate undervaluation of this sort can be other than arbitrary and capricious. It is simply an example of the unsound assessment practice of "trending back", which seeks to solve the problem by selecting a supposedly "normal" base year, in the hope that prices may eventually decline to that level. The hope seems vain in the light of the experience of the past twenty years. The result is to shift the tax burden from one class to another, or from one group to another, without any objective standard, making it difficult, if not impossible, for any taxpayer to successfully challenge his own assessment, by proving that others are more favored. For a discussion of the problem, see the extensive note on *Tax Assessments of Real Property* in 68 Yale L. J. 335. See also Johnson, *Should Property Be Assessed at Full Current Value?* 7 Journal Of Taxation, 316. For the reasons

stated I think the appellant is entitled to the relief indicated in the *Sears* case, to which it would clearly have been entitled in the absence of the retroactive statute under consideration. Cf. *Cromwell v. Jackson,* 188 Md. 8, 29; *State v. Rice,* 115 Md. 317, 327.